## THOMAS J. TOBIN *vs.* CHRISTOPHER KELLS.

Suffolk.    November 10, 1910. — January 4, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Practice, Civil,* Auditor's report, Exceptions.    *Contract,* Rescission, Performance and breach, Consideration.    *Words,* "Perfect satisfaction."

No exception lies to the denial of a motion to recommit an auditor's report with an instruction to the auditor to report all the evidence on which he based a certain finding.

In refusing to entertain an exception to the denial of a motion to recommit an auditor's report, it was *said,* that, although it is a proper exercise of judicial discretion for a trial judge to recommit an auditor's report where it appears that the auditor has made an erroneous ruling which is likely to deprive a party of important rights, yet the mere fact that an auditor has erred upon abstract questions of law, which can be raised afterwards at the trial, does not make it necessary to recommit his report.

In refusing to entertain an exception to the denial of a motion to recommit an auditor's report with an instruction to the auditor to report all the evidence on which he made a certain finding, it was *said,* that, even if this court had had authority to review the exercise of the discretion of the trial judge, the bill of exceptions here presented no means of doing so, as it did not show what facts, if any, were before the judge when he denied the motion.

In an action on an account annexed for labor and materials furnished by the plaintiff to the defendant in the remodelling of certain houses, the defendant relied on a contract in writing for the work, which the plaintiff had abandoned, and the plaintiff contended that the abandonment of the contract in writing was by mutual agreement of the parties.    An auditor found and reported that the contract in writing had been annulled by the parties.    The plaintiff testified that he asked the defendant whether he was going to make a payment to the plaintiff in accordance with an oral agreement modifying the terms of the original contract, that the defendant said "No," whereupon the plaintiff said that under the circumstances all he could do was to quit, to which the defendant replied, "Quit and be damned," and that thereupon the plaintiff did quit and brought his action.    *Held,* that the finding of the auditor was *prima facie* evidence on which the jury had a right to find that the contract in writing was rescinded, and that they could make the same finding upon the testimony of the plaintiff, as an assent by the defendant to the plaintiff's proposition to abandon the work would be sufficient although given angrily and with an oath.

In an action on an account annexed for labor and materials furnished by the plaintiff to the defendant in the remodelling of certain houses, the defendant contended that the plaintiff could not recover because he had not completed his contract, and the plaintiff contended that he was prevented from doing so by the wrongful conduct of the defendant.    The plaintiff testified that, shortly after a contract in writing had been made for the work, he told the defendant that he had been disappointed in regard to obtaining money to use upon the work and that it would be very hard for him to keep on with the contract, and

that an oral agreement then was made between the parties changing the terms of the contract in writing as to the payments to be made by the defendant, so that the defendant should pay to the plaintiff a certain sum of money each week, if the payments thus to be made did not exceed the next instalment fixed by the contract in writing, and there was evidence on which the jury could have found, in spite of evidence of the defendant to the contrary, that a modification of the contract was made, and that it was made in consequence of the plaintiff's statement to the defendant, which was understood by both parties to be in substance a statement that the plaintiff could not go on with his work and must abandon the contract unless it was modified. It appeared that the defendant afterwards' refused to make any further payments required by the modified agreement testified to by the plaintiff, and that the plaintiff thereupon abandoned the work and sued the defendant for damages. *Held*, that, under the decisions of this court, the modification of the contract, which could have been found to have been made, could have been found to have had a good consideration and to be binding on the parties, and that therefore the jury could find that the defendant unjustifiably prevented the plaintiff from going on with his work under the contract, and thus released him from any obligation to complete it.

A contract in writing to do certain work in remodelling certain houses to the "perfect satisfaction" of the owner, means that the work shall be performed in such a manner that a reasonable man ought to be satisfied with it.

CONTRACT on an account annexed for labor and materials alleged to have been furnished by the plaintiff to the defendant in the remodelling of certain houses in that part of Boston called South Boston. Writ dated June 24, 1907.

In the Superior Court the case was referred to Everett C. Bumpus, Esquire, as auditor, who filed a report.

There were two bills of exceptions. The first related to a motion to recommit the auditor's report, which was heard by *Richardson*, J. That bill of exceptions was as follows:

"The case was referred to Everett C. Bumpus, Esquire, as auditor, who reported, among other things, that the plaintiff began work under written contract, and stated, 'I find that the contract was annulled by the mutual action of the parties.' The auditor's report, as annexed to another bill of exceptions in the case, may be treated as a part of this bill of exceptions. The defendant thereupon moved that the court recommit the case to the auditor with instruction to report all the evidence upon which he based that finding. The defendant contended that there was no evidence on which such a finding could be based as a matter of law, and that, if the report were allowed to stand without showing the facts upon which the finding was made, this finding of the auditor might be used as evidence in the case

before the jury when there was absolutely no fact, which, as a matter of law, would be sufficient to support the finding, and thus the auditor would in effect be given the power to create evidence without any facts to support it. The court refused this motion to recommit and the defendant excepted, and being aggrieved, prays that his exceptions may be allowed."

Later the case was tried before *Crosby*, J. The auditor's report was put in evidence, subject to the exception which is stated later. In his report the auditor found that the amount of work and materials furnished by the plaintiff was worth the sum of $481 over and above the amount which the defendant already had paid. The evidence introduced at the trial showed that the plaintiff entered into a contract in writing with the defendant, whereby he agreed to do certain remodelling and make certain additions to two houses in South Boston " to the perfect satisfaction of the owner " for the sum of $5,777, to be paid in five instalments; that the sum of $1,119 was paid by the defendant, namely, on May 11, $250, on May 18, $250, and on May 25, $619.

The plaintiff testified that a few days after the contract was made he went to the defendant and stated that a certain person who had agreed to furnish him with money had become ill and could not be approached on business matters at that time, and that it would be very hard for him to keep on with the contract on that account; that the defendant asked whether the plaintiff had not any money himself, and the plaintiff said that he had about $600; that the defendant told him to use that $600 and that the defendant would see whether he could help him out by changing the payments on the contract, and asked how much the plaintiff would want every week, and that the plaintiff told him about $300; that the defendant said that that was a good deal of money and asked whether the plaintiff could not get along with less, to which the plaintiff answered that he could get along perhaps with $250 a week; that then the defendant said that he was sorry that the plaintiff bothered him in that way, but said that he would change the contract so far as the payments were concerned and would pay the plaintiff $250 per week, provided the payments thus made did not exceed the amount of the next instalment required under the contract; that the plaintiff

thanked the defendant for changing the contract in his favor in that way, and that the defendant said that it was all right. The plaintiff, on cross-examination, further testified that he did not state that he was going to give up the job; that he " simply told him his tale of woe "; and that the defendant said he would advance the money earlier than provided for in the contract.

The defendant denied that he agreed to pay the plaintiff any amount except as provided for in the written contract, but testified that he did state that he would see what could be done in getting money from his mortgagee, and that as a matter of fact he did make two payments' to the plaintiff of $250 each, one being made on the eleventh day of May and the other on the eighteenth day of May, but he denied that there was any agreement to change the contract.

The plaintiff further testified that on June 7 he went to see the defendant about a quantity of old plastering that was taken off the building, and talked to the defendant about his taking off the plastering and causing more work on the contract, and also asked him for an instalment of money, $250, due according to the agreement; that the defendant said he would not pay any more money; that, when the plaintiff said it was agreed between them that he should do so, the defendant said he was not going to make any further payments on that agreement; that in response to the plaintiff's statement about plastering the defendant said he did not care, that he would have the plastering done to suit him; that the plaintiff told the defendant that his estimate for plastering was $700; that he had received an estimate from a plasterer for $798; that a plasterer who went through the buildings that morning with the plaintiff gave an estimate for the plastering required to be done of $1,100; that the plaintiff's men had reported that they had seen the defendant remove plastering, and that the defendant said that he was going to have the plastering done to suit him; that the plaintiff said that " any man could do no different than quit under those circumstances "; that this talk was in the defendant's barn; and that after this talk the plaintiff went over to the house which was being remodelled; that the defendant soon after came over and the plaintiff asked him whether he was going to live up to his con-

tract and pay the money due that day; that the defendant said "No"; that the plaintiff said that under the circumstances all he could do was to quit, and that the defendant said "Quit and be damned"; that thereupon he did quit and brought this action.

The defendant contended that the only conversation was to the effect that the plaintiff demanded the money and he denied any obligation to pay; that thereupon the plaintiff said that he should quit if the money was not paid; and that the defendant replied that he did not see that he could help it if he did, but informed him that he did so at his peril and forbade him to remove any of the stock.

There was a great deal of conflicting testimony as to various acts of the plaintiff and the defendant, and as to the amount of work done, its character and value.

The report of the auditor was admitted in evidence subject to the defendant's exception to the admission of the following sentence in the report: "A dispute arose between the parties, the result of which was a discontinuing by the plaintiff, with the knowledge and sanction of the defendant, of further service under the contract, and I find that the contract was annulled by the mutual action of the parties."

At the close of the evidence, the defendant asked the judge to rule that the plaintiff was not entitled to recover and also asked for many other rulings. The judge refused to make these rulings, and, among other instructions, gave the following:

"If you find that the parties agreed that the contract should be given up, or if you should find that the plaintiff was prevented from completing it through no fault on his part, but through the fault of the defendant Kells, then you would come to the question as to whether the plaintiff is entitled to recover anything for the labor and materials furnished. And as bearing upon this question, as to whether there was an abandonment of the contract on the part of the plaintiff, I instruct you that no act of the defendant which did not go to the extent of stopping the plaintiff in his work, or wrongfully interfering with the progress of the work, can be considered as a breach of the contract.

"Under the terms of this contract, as you will notice, it is provided that the defendant, Kells, the owner, was to be the judge whether the work was properly done or not; that is, the contract

says that the work was to be done to the perfect satisfaction of the owner. And the question is, what does that mean? I instruct you, gentlemen, that that does not mean that the defendant has a right to say, under all circumstances, that the work is not satisfactory to him and therefore he will not pay for it. That is not the interpretation which the law puts upon words of that character in contracts of this kind. That means this: That the work must be satisfactory, and the materials must be satisfactory, to the owner, but the owner must act as a reasonable man under the circumstances; and if the work and materials are of such character as a reasonable man ought to be satisfied with, then the plaintiff has performed his duty in that respect.

"With reference to this matter of the annulment of the contract, if the contract was annulled by the parties, it must appear that either by their acts or conduct or words, or both, both parties agreed that the contract should be so annulled.

"So in this case, gentlemen, you will determine whether or not the plaintiff was justified in giving up the contract, or whether it was agreed between him and the defendant that it should be given up; and if so, then you will say what, if anything, were this labor and these materials worth over and above what was paid to the plaintiff."

The judge also instructed the jury as to the effect of an auditor's report and as to damages, and to the instructions on these matters neither party excepted.

The jury returned a verdict for the plaintiff in the sum of $946; and the defendant alleged exceptions.

*O. Storer,* (*A. G. Tibbetts* with him,) for the defendant.

*C. H. Donahue,* for the plaintiff.

SHELDON, J. 1. The defendant's motion for the recommital of the auditor's report with the instruction to the auditor to report all the evidence upon which was based the finding that the special contract had been annulled by the parties was addressed solely to the discretion of the presiding judge, and the defendant had no right of exception to the denial of the motion. This has been so often declared that we cite only a few of the later cases. *Butterworth* v. *Western Assurance Co.* 132 Mass. 489. *Carew* v. *Stubbs,* 161 Mass. 294. *Craig* v. *French,* 181 Mass. 282. *Tripp* v. *Macomber,* 187 Mass. 109, 110. *Allwright* v.

*Skillings*, 188 Mass. 538. No doubt it would be a proper exercise of judicial discretion to recommit a report if it appeared that the auditor had made an erroneous ruling which would be likely to deprive a party of important rights. But ordinarily the opportunity given to try a case fully before a jury and thus to raise all questions of law, with the fact that the auditor's findings are not conclusive, will enable both parties to safeguard their rights on all material questions. The mere fact that an auditor may have erred on some abstract questions of law would not make it necessary to recommit his report.

But upon these exceptions, as in *Hunneman* v. *Phelps*, 199 Mass. 15, even if we had authority to review the discretion of the judge below, we have not the means of doing so. We do not know what facts, if any, were shown or agreed to before him; we could not say that his action was wrong upon the face of the report, and nothing else is before us.

2. Under the clear and distinct instructions given them, the jury must have found that the written contract between the parties was no longer in force; that either the defendant had prevented the plaintiff from performing that contract and so the latter had a right to treat it as no longer binding (*Bailey* v. *Marden*, 193 Mass. 277 ; *Posner* v. *Seder*, 184 Mass. 331, 333 ; *Brown* v. *Woodbury*, 183 Mass. 279), or else that it had been annulled by the consent of both parties. But the defendant contends that such a finding was unwarranted upon either ground.

The auditor found and reported that the contract had been annulled by the parties. This furnished *prima facie* evidence in favor of that contention. *Fisher* v. *Doe*, 204 Mass. 34, 39, 40. The jury had a right so to find. And the plaintiff's testimony indicated that his proposition to abandon the work had been assented to by the defendant. *Nickerson* v. *Weld*, 204 Mass. 346, 357. An assent would be sufficient though given angrily and with an oath. This too was for the jury.

But the verdict may have been based merely upon the ground that the plaintiff was not at fault for not having completed his contract, but was prevented from doing so by the wrongful conduct of the defendant. Was such a finding warranted ?

The plaintiff contends that the defendant on June 7 wrongfully refused to make a payment which he was then under obligation to make, and without which, as the defendant knew, the plaintiff could not go on with the work. This payment was not due under the terms of the original contract. But the plaintiff contended and testified that shortly after the contract was made he told the defendant that he, the plaintiff, had been disappointed in obtaining some money to use upon the work, and that it would be very hard for him to keep on with the contract; and that an oral agreement was then made between the parties, changing the terms of the written contract as to the payments to be made 'by the defendant, so that the defendant should pay to the plaintiff the sum of $250 per week, if the payments thus to be made did not exceed the next instalment fixed by the contract. The defendant denied this assertion ; the plaintiff's testimony was somewhat weakened on cross-examination, and the auditor's report did not fully sustain the contention; but the question was for the jury. They could find that the modification was made, and that it was made in consequence of the plaintiff's statement to the defendant, which was understood by both parties to be in substance a statement that the plaintiff could not go on with his work and must and would abandon the contract unless it was modified. This makes it necessary under our decisions to say that the modification had, or could be found to have had, a good consideration, and that it was valid. *Munroe* v. *Perkins*, 9 Pick. 298. *Holmes* v. *Doane*, 9 Cush. 135. *Peck* v. *Requa*, 13 Gray, 407. *Hastings* v. *Lovejoy*, 140 Mass. 261, 264. *Earnshaw* v. *Whittemore*, 194 Mass. 187. *Hanson & Parker* v. *Wittenberg*, 205 Mass. 319, 324. *Parrot* v. *Mexican Central Railway*, ante, 184.

It follows that the jury could find that the defendant did unjustifiably prevent the plaintiff from going on with his work under the written contract. They could find that the defendant's refusal to make the payment due on June 7, or any future payments under the modified agreement, was not justified by the disputes that had arisen about plastering or the excavations to be made, or by the contention that the plaintiff's work had not been done to the defendant's " perfect satisfaction."

These words are no stronger than the expression "entire satisfaction," which was considered in *Handy* v. *Bliss*, 204 Mass. 513. The instructions given conformed to the rule laid down in that case, and were correct.

These considerations make most of the defendant's requests for instructions immaterial. So far as necessary, they are covered by what has been said.

*Exceptions overruled.*