DIRECTOR GENERAL OF RAILROADS *vs.* EASTERN STEAM-
SHIP LINES, INCORPORATED.

Suffolk.    December 8, 1922, March 30, 1923. — May 25, 1923. ·

Present: RUGG, C.J., DeCOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Jurisdiction. Director General of Railroads. Constitutional Law. Practice,
Civil,* Parties; Amendment; Auditor: report, recommittal of report;
Exceptions; Conduct of trial: requests, rulings and instructions, charge
to jury. *Cape Cod Canal. Witness,* Refreshment of recollection. *Evidence,*
Competency; Opinion: expert.

Whether or not an action of tort for damage caused to the Cape Cod Canal
by negligence of the defendant, begun by the incumbent of the office of
Director General of Railroads on October 29, 1919, had abated under the
provisions of 30 U. S. Sts. at Large, 822, on December 8, 1922, when it was
presented to this court on exceptions by the defendant, by reason of the
resignation of the Director General who had begun the action and the
failure to substitute either of his successors in office as party plaintiff, was
not decided, it being *held,* that, by 42 U. S. Sts. at Large, 1443, approved
on March 3, 1923, such action might be " prosecuted to final judgment . . .
substituting at any time before satisfaction of such final judgment . . . the
successor in office."

42 U. S. Sts. at Large, 1443, deprived the defendant in the action above
described of no vested constitutional right.

An exception to an order denying a motion to recommit a report of an auditor
in an action at law because of alleged erroneous rulings of law made by the
auditor and for a report of evidence before the auditor was overruled, it
appearing that the questions relating to the rulings of law were dealt with
adequately by the judge who presided at a subsequent trial of the action
and that there was no abuse of discretion on the part of the judge who denied
the motion.

At the trial of an action against a steamship company for damage caused
to the Sagamore Bridge over the Cape Cod Canal through alleged negligence
of those in control of a vessel of the defendant, the defendant alleged an
exception to a refusal of the judge to exclude from the consideration of the
jury under G. L. c. 221, § 56, certain portions of the report of an auditor
by whom the action had been heard, which the defendant contended were
based upon an alleged " finding of law that the doctrine of *res ipsa loquitur*
applies to this case." It appeared that, in his charge, the judge had
instructed the jury that the auditor's rulings on the law were imma-
terial, that they should disregard entirely certain citations by the auditor,
that the burden was on the plaintiff to prove that negligence on the part
of those handling the vessel caused the accident, and that the mere fact
that the vessel hit the bridge would not be enough to prove such negligence.
*Held,* that, even if there was any erroneous ruling of law made by the
auditor, it did not injuriously affect the substantial rights of the defendant.

The auditor in the action above described also stated in his report, that those in charge of the steamer " were bound to have full knowledge of shoals and other obstacles or difficulties in navigation regularly existing there." The trial judge refused to exclude this statement from the consideration of the jury and, without objection on the part of the defendant, instructed them: " The captain of a vessel in going through the canal . . . would be expected to know the usual current, the usual obstructions, the various things about it that make navigation in that particular place dangerous or not dangerous; he is expected to know how to handle his vessel in that place before he goes into it." *Held*, that the auditor's statement apparently was a finding of fact based on evidence before him, but, even if it were regarded as a ruling of law, in view of the judge's instructions the defendant was not harmed by the refusal to exclude it under G. L. c. 221, § 56.

At the trial of the action above described, it appeared that the defendant's steamship collided with the Sagamore Bridge between 1:40 A.M. and 2 A.M. on July 31, 1918, six days after the Director General of Railroads, plaintiff in the action, had taken charge of the canal. The weather was sufficiently clear to make the lights on either side of the canal and on the bridges plainly visible. It was almost calm. The steamer had a favorable current of about three knots an hour and the height of the tide at this time was about two feet above mean low water. The defendant contended that, although carefully handled, the vessel became unmanageable owing to the shallowness of the channel; that it was the legal duty of the plaintiff to maintain the canal at a depth of twenty-five feet at mean low water and that he failed to do so. The jury found for the plaintiff. *Held*, that

(1) Extracts from the official " log " of the canal, kept by the despatcher from his own observations at Buzzards Bay and from reports by telephone from the other bridges in the regular course of his duties and under the direction of the superintendent and general manager of the canal, were admissible to show the time when the vessel arrived at the Buzzards Bay, the Bourne and the Sagamore bridges;

(2) It was not error to permit the despatcher and the operator of the draw at Sagamore Bridge in their testimony to refresh their recollections from the canal " log," it being immaterial who made the entries therein, if they recalled the facts to the memory of the witnesses;

(3) Exceptions by the defendant to hypothetical questions, put to experts on navigation familiar with conditions in the canal and based on an assumption that the vessel was proceeding through the canal at an average speed of twelve miles, must be overruled because there was evidence of the facts assumed as the basis of the questions;

(4) Exceptions by the defendant to the admission of evidence that other vessels passed through the canal in safety about this time were overruled, it appearing that the judge confined the use of the evidence to ascertaining, if possible, what conditions were likely to exist in the canal, particularly with regard to the depth of water, which would make the safe handling of the vessel impossible, and instructed the jury that they " should not say that it shows these people were negligent at this time, that that same vessel went through at some other time or that other vessels of like shape and bulk have gone through there safely; "

(5) It was not error to admit testimony of witnesses expert in navigation in the canal, in substance, that they knew of no conditions existing there

which would cause a ship like the vessel in question to become unmanageable, the subject being a proper one for opinion evidence on the issue raised by the defendant, and the qualifications of the witnesses being undisputed.

It is proper at a trial to refuse to grant rulings of law, correct as abstract propositions, if there is no issue at the trial to which they are applicable.

A judge, who has instructed a jury fully as to principles of law applicable at a trial, properly may refuse to grant requests which single out certain portions of the evidence and ask for rulings as to their effect.

At the trial of the action above described, it appeared that, when Cape Cod Canal was completed, it was of the required depth of twenty-five feet. A finding by the auditor, that "the canal at the time of this accident was reasonably safe and convenient for vessels of the type, size and draft of the" vessel, was uncontrolled by evidence at the trial. The judge, subject to an exception by the defendant, instructed the jury, "There was no obligation in law to maintain it [the canal] always exactly at twenty-five feet. It was subject to such circumstances as nature imposes upon it, and the fact, if it was a fact, that at some of the points at some particular time it might happen to be less than twenty-five feet in depth, does not make the Canal Company or the Director General of Railroads in fault. He does not guarantee or he is not held in law to guarantee the mean depth of twenty-five feet at all times and under all circumstances." *Held*, that the judge's construction of the charter of the Cape Cod Canal Company, St. 1899, c. 448, § 3, was correct; and that the defendant was not harmed by the portion of the charge excepted to.

Rulings asked for by the defendant, at the trial of the action above described, based on the possibility of the jury finding that the damages were caused by negligence of the plaintiff, properly were refused where the negligence of which the defendant contended the plaintiff was guilty was an alleged failure to maintain the canal at a depth of twenty-five feet.

TORT for damages resulting from a collision on July 31, 1918, of the freight steamer Herman Winter, owned and controlled by the defendant, with the Sagamore Bridge over the Cape Cod Canal, alleged to have resulted from negligence on the part of those in charge of the steamer. Writ dated October 29, 1919.

The action was referred to an auditor. After the filing of his report, the defendant moved that it be recommitted to him on the grounds and for the purposes described in the opinion. The motion was heard by *Sisk*, J., and was denied; and the defendant alleged an exception.

The action then was tried before *Wait*, J. Material evidence is described in the opinion. At the close of the evidence, the plaintiff asked for and the judge granted the following rulings, subject to exceptions by the defendant:

" 4. There is no evidence of negligence on the part of the plaintiff.

" 5. The plaintiff was not on July 31, 1918, under any legal duty to maintain the Cape Cod Canal at any prescribed depth.

" 6. There is no evidence that on July 31, 1918, the Cape Cod Canal was not reasonably safe and convenient for vessels of the type, size and draft of the steamer ' Herman Winter,' if said steamers were properly equipped and handled.

" 7. There is no evidence that the accident was inevitable.

" 8. There is no evidence that it was not practicable to take the Herman Winter through the Canal safely under the conditions existing on the night of the accident."

" 13. A steam boat approaching a bend in a canal should proceed with caution and at reduced speed.

" 14. That a vessel is proceeding moderately through the water will not excuse her if, proceeding immoderately over the bottom, she strikes a stationary and properly located and lighted object."

" 17. It is not incumbent on the plaintiff, after proving an accident which implies negligence, to go further and show what the particular negligence was, when from the circumstances it is not in his power to do so.

" 18. Where the nature of the accident and its circumstances have any tendency to prove negligence and especially when the defendant had exclusively the means of knowledge within his control as to what caused that injury, it is reasonable to ask the defendant to explain the cause and exculpate himself."

" 21. There was no statutory or other legal requirement that the Cape Cod Canal should be maintained in the same condition as when first finished and accepted.

" 22. If the canal were in a defective condition at the time it was taken over by the President, the plaintiff would not be chargeable with negligence on account of such defective condition until he had had reasonable opportunity to remedy it."

The defendant asked for the following rulings and instructions, which, except as given in substance in the charge

to the jury and described in the opinion, were refused, subject to exceptions by the defendant:

" 2. The mere fact that a collision occurred does not give rise to any presumption of law or fact that there was anything wrong with the equipment, or that the vessel was in any way negligently managed."

" 4. The defendant is not bound to satisfy you as to the real cause of the accident. If you find that the defendant, its servants and agents were in the exercise of due care, you must find a verdict for the defendant, even though you may not be satisfied as to the real cause of the accident.

" 5. If upon consideration of all the evidence in the case you find that the defendant, its servants and agents were in the exercise of ordinary care, you must find for the defendant, even though the accident itself remains unexplained."

" 8. There is no presumption of law or fact from the mere fact of the accident itself that the defendant's negligence was the cause of it.

" 9. You have no right to infer or conclude that the defendant was negligent from the fact that this same ship, or other ships of the same or greater draught, on other occasions passed through the canal safely.

" 10. It was not incumbent on the defendant to show that the Herman Winter herself, or other vessels, ever became unmanageable on other occasions. Such evidence would be merely bringing in collateral issues not involved in this case.

" 11. If it were shown that the Herman Winter or other vessels had become unmanageable, or if it appears that the Herman Winter or other vessels on other occasions passed through the canal in safety; these facts would not be a proper basis for inference on your part that on the occasion of the accident the defendant was either negligent or in the exercise of due care.

" 12. The circumstances of other passages of the Herman Winter, and the passages of other ships, are not shown in the evidence before you, and may have been materially different from the circumstances connected with this accident. Ships other than the Herman Winter passing through may have been essentially different from the Herman Winter

in material particulars.    It may even be that ships which were managed carelessly passed through the canal and the Sagamore Bridge safely, because the circumstances were different, or merely by luck or chance; and it may be that the Herman Winter on this occasion, although managed carefully, came into collision through misfortune and accident, and not through any negligence on the part of the Steamship Company or its servants.    You are instructed, therefore, that you cannot find the defendant liable because on other occasions the Herman Winter or other ships passed through the canal without accident."

" 16.  The duty having been cast upon the defendant to go forward with the evidence in attempting to meet or control the the auditor's report, it is not called upon to account satisfactorily for the accident, but only to show or explain by a fair preponderance of the evidence that it had not been guilty of negligence.    After it has introduced evidence from which the jury could find that it had used due care in the equipment of its steamer, and in the management of its steamer at the time of the collision, the burden of proof has not been shifted, but still remains upon the plaintiff to establish the defendant's negligence upon all the evidence of which the auditor's findings of fact form only a part."

" 24.  Provided you find that those in control of the management of the steamer used due care in the operation of the steamer at the time of the first sheer to the north bank, and down to the time when the captain ordered full speed astern, then the question as to whether or not the captain was negligent in not going ahead full speed in the hope of passing through the draw opening, instead of backing the ship, is not a question for you to determine, because all that can be asked in the management of the steamer is that the persons in charge of her shall use their best judgment at the time of an emergency of this character; and if you find that the persons in charge of this ship did use their best judgment in this emergency and under these circumstances, your verdict must be for the defendant."

" 26.  The plaintiff cannot recover even if the jury should find that the defendant was negligent either in the equip-

ment of the steamer or management or conduct of the steamer, if the jury shall find that the negligence of the plaintiff directly contributed to cause the collision.

" 27. If the jury find that the plaintiff had invited the steamer into the canal, and that the defendant had paid for the passage of the steamer through the canal the toll demanded by the plaintiff for such passage, then the steamer was rightfully in the canal, and the plaintiff cannot hold the defendant responsible for a collision with the bridge if the jury find that the failure of the steamer to properly mind her helm was due to shoals in the canal.

" 28.  The plaintiff is not an insurer of the safety of the canal, but at the time of the accident he was required to use reasonable care to keep the canal in such a state of repair as to be reasonably safe for the use of the steamer ' Herman Winter,' which he invited to enter it, and for which steamer he held it out as fit and ready.  If he failed to use such due care, having invited the steamer into the canal and received the toll which he demanded for her passage, or if there was a defect in the canal which was known to the plaintiff or his agents, or which by the use of ordinary care and diligence should have been known to him, he cannot recover for the results of a collision if you find that the collision was caused by such defect.

" 29. Upon weighing all the evidence, if you find that the steamer, at the time when she swung toward the south bank, refused to mind her starboard helm, and was then over a place in the bottom of the canal which had shoaled to a less depth than twenty-five feet at mean low water, and if you find that the steamer was in a position where she needed quick action from her rudder, and if you find that the action of the rudder was retarded by shoals under the steamer's bottom, then you will find for the defendant.

" 30. If you find that the water was shoaler than was safe and convenient for navigation in front of the Sagamore Bridge, and that when the vessel broke away from the north bank of the canal it came over this shoal area, and that the shoalness either prevented the ship from minding her helm, or made its handling more sluggish, and by so doing con-

tributed to cause the collision, then the defendant is not responsible to the Director General of Railroads for the damage done to the bridge.

" 31. By its charter the Boston, New York and Cape Cod Canal Company was obliged to maintain throughout the canal a depth of twenty-five feet at mean low water. This charter was in force and had been in no way modified at the time of the collision. If you find that the defendant was in the exercise of due care at the time when the first sheer occurred to the north bank, and that the defendant's servants were using reasonable and proper means to get the ship's bow away from the north bank, and that a sheer occurred within such proximity of the Sagamore Bridge that the defendant needed for the proper management of the steamer water of a sufficient depth so that the rudder of the steamer would act as efficiently as possible; and if you find at the time when the steamer's rudder was put hard-a-starboard that the steamer had passed down into a position where she was over shoals in the canal where the depth of water was less than twenty-five feet at mean low water, and that the shoals were the cause of the steamer's being sluggish about minding her starboard helm, and helped cause the collision, then you must find for the defendant."

" 33. If you find that the defendant had knowledge of difficulties in navigation, and of shoal water in the neighborhood of Sagamore Bridge, it does not follow that by reason of his knowledge the defendant assumed or became liable for damage to the canal or its appurtenances, or the bridges over it. Its obligation to the Canal Company was merely to use due and ordinary care under all the circumstances in navigating through the canal.

" 34. The Boston, Cape Cod and New York Canal Company is a Massachusetts public service corporation. It has a Massachusetts charter, given by the Legislature of Massachusetts. It was chartered to construct and operate a ship canal from Buzzards Bay to Cape Cod Bay. The charter provided that the canal, when constructed, should have a depth of not less than twenty-five feet at mean low water and a width of not less than one hundred feet at the bottom,

And the charter also provided that the company could establish for itself a toll on vessels using the canal, at such rates as the directors of the company might determine.

" 35. Prior to its being taken over by the Director General of Railroads on July 25, 1918, the duty of the Canal Company to provide a reasonably safe and sufficient canal channel for the steamers which it invited into the canal, and for which toll was charged and paid, was analogous to the duty of a railroad as a common carrier to provide a reasonably safe road-bed, tract, equipment privileges, and to maintain and operate the property in proper condition for rendering safe, prompt and adequate service. So that the duty of the Canal Company was to maintain and operate the property in proper condition for rendering safe, prompt and adequate service."

" 37. By the President's Proclamation, taking over the canal on July 25, 1918, it was provided that the management of the canal should remain subject to all statutes of the Commonwealth of Massachusetts until the Director General should otherwise order; and if you find that there was no order of the Director General modifying the requirements of the canal charter, you will find that the Director General, when he invited the Herman Winter into the canal and received the toll demanded by him, was so bound to maintain and manage the canal that it could be used with reasonable public safety and convenience by the Herman Winter. And it was the duty of the Director General to the defendant to exercise in the management of the canal reasonable and ordinary care.

" 38. Unless you find that the Director General had issued any orders in any way modifying the requirements of the charter, it was the duty of the Director General to keep the canal in proper order and condition; and if the jury shall find that the plaintiff invited the Herman Winter into the canal and received a toll paid by the defendant for the passage of the Herman Winter through the canal, this amounted to an undertaking that the canal was reasonably safe and convenient for the passage of the Herman Winter.

" 39. If you find that the charter had not been modified by any order of the Director General, then the right to demand tolls and the liability for neglect of duty for the performance of which the tolls were authorized, and the duty of the defendant to use due care, and its responsibility for not so doing, are reciprocal and correlative.   The tolls are the remuneration to the plaintiff for the responsibility which he owed to the defendant for the maintenance of a proper canal, reasonably safe for the passage of the steamer through the canal, and the defendant is bound to exercise due care in using these facilities in passing through the canal.

" 40. I instruct you as a matter of law that when the Director General of Railroads seeks the courts of Massachusetts and attempts to maintain this suit against the defendant he must comply with all the substantive law of Massachusetts.

" 41. On March 21, 1918, Congress passed a law, Section 10 of which provided that transportation companies, like the Cape Cod Canal, and therefore the Cape Cod Canal Company itself, were under Federal control and subject to all laws and liabilities as transportation companies, whether arising under state or federal laws, or at common law, except in so far as this law was inconsistent with any order of the President.   This law applied to suits against the Director General, and made the rights and liabilities of the Director General the same as those of the Canal Company prior to the President's Proclamation of July 25, 1918.

" 42. If you find that the plaintiff or his agents knew at the time the Herman Winter entered the canal that there was a shoal area extending practically over the full width of the canal; also extending from a point six hundred feet west of the Sagamore Bridge up to the bridge itself, and that this shoal area was less than twenty-five feet at mean low water, and that it tended to make the steering of the steamer sluggish and less efficient than it would be if the depth was twenty-five feet or more at mean low water, then the plaintiff, the Director General of Railroads, assumed the risk of any damage to the bridge which might result from the

collision of the Herman Winter with the bridge which you find was caused in whole or in part by the canal.

"43. The Director General of Railroads when he took over the canal on July 25, 1918, and appointed Colbeth, Manager, and Dunbar, Chief Engineer, became charged with any knowledge which Colbeth and Dunbar had with reference to the conditions of the canal. If there were defects in the canal of which Colbeth and Dunbar had knowledge, the Director General was charged with this knowledge; and if being so charged with knowledge of such defects, he invited the Herman Winter to pass through the canal, upon payment of tolls, he assumed the risk of damages to the canal, its appurtenances and the bridges over it, which might be caused by such known defects."

Certain portions of the charge to which the defendant saved exceptions are described in the opinion. The jury found for the plaintiff in the sum of $25,017.54; and the defendant alleged exceptions.

42 U. S. Sts. at Large, 1443, referred to in the opinion, is printed *ante,* 115.

*G. S. Selfridge,* for the defendant.

*E. Field,* for the plaintiff.

DECOURCY, J. The Director General of Railroads brought this action of tort to recover for injuries to the Sagamore bridge over the Cape Cod Canal, caused on July 31, 1918, when a steamer owned and operated by the defendant collided with the bridge.

The case was argued on the merits on December 8, 1922. Subsequently, at the request of the court, counsel filed briefs on the question whether by reason of the federal act of February 8, 1899 (30 U. S. Sts. at Large 822, c. 121), the resignation of Mr. Hines as Director General, and the failure to substitute his successor Mr. Payne or the present incumbent Mr. Davis within the time prescribed by that act, has caused the action to abate so that it cannot now be prosecuted to final judgment on behalf of the United States.

It is by no means clear that Congress intended the act of 1899 to apply to such a case as this, where the right or duty upon which the action is founded is not personal to the

officer named as a party, but is one of the body politic to which the office is attached. *Thompson* v. *United States,* 103 U. S. 480. *Knights* v. *Treasurer & Receiver General,* 236 Mass. 336. Even if an action would have abated at common law, when it was brought against an officer of the United States, on the death of the officer, — because suits against the sovereign may be maintained only in accordance with the terms of its express assent — it does not follow that an action brought by the United States, through a public officer, to protect its property from injury, would have abated. And no case has been called to our attention where the act of 1899 has been applied in such a case. See *Cotton* v. *United States,* 11 How. 329; *Pooler* v. *United States,* 127 Fed. Rep. 519.

But even assuming that this action came within the operation of the 1899 act, all doubt as to our jurisdiction to decide the case has been removed by the act of Congress approved on March 3, 1923, (42 U. S. Sts. at Large, 1443) amending § 206 of the Transportation Act, 1920. By its express provisions the present action may be " prosecuted to final judgment . . . substituting at any time before satisfaction of any such final judgment . . . the successor in office." We deem it unnecessary here to consider the statute beyond calling attention to its language, and to the case of *Sack* v. *Director General of Railroads, ante,* 114, decided at this session, where it was fully discussed. The contention that this statute deprives the defendant of any vested constitutional right in our opinion is not tenable.

As to the merits: The Herman Winter was a freight steamer, two hundred and eighty-eight feet long, forty-one feet beam, and fitted with a left hand propeller. She left New York about noon July 30, 1918, drawing fifteen feet of water aft and thirteen feet nine inches forward, and arrived at the Buzzards Bay entrance of the dredged channel of the canal sometime after midnight. According to the auditor's report she passed through the draw of the Buzzards Bay or railroad bridge in the canal proper at 1:15 in the morning of July 31; passed through the Bourne Bridge at 1:18 A.M.; and after stopping her engines at 1:16, and

running them slowly at 1:17 arrived at Sagamore Bridge, five miles beyond the railroad bridge, at 1:40 A.M. The weather was sufficiently clear to make the lights on either side of the canal and on the bridges plainly visible. There was no unusual wind, in fact it was almost calm. The steamer had a favorable current of about three knots an hour, and the height of the tide at this time was about two feet above mean low water. When the Herman Winter came in sight of the Sagamore Bridge, the draw — which was one hundred forty-two feet wide and well lighted — was open. Failing to hit the opening, she " ran into and hit with her port bow a dolphin or bunch of piles standing there as an aid to navigation in passing through the draw, and her bow swinging to the southward, her stem struck the stationary part of the bridge about thirty feet south of the draw opening; she then swung down with her port side upon the south fender almost demolishing it, and thus caused the damage complained of." The contention of the defendant was, in substance, that when the steamer was almost a quarter of a mile from the bridge, the bow sheered toward the port bank: that, although carefully handled, she became unmanageable, owing to the shallowness of the channel: that it was the legal duty of the plaintiff to maintain the canal at a depth of twenty-five feet at mean low water, and he failed to do so.

There was a verdict for the plaintiff. The defendant's bill contains numerous exceptions dealing with the auditor's report, the admission and exclusion of evidence, and the instructions given and refused by the trial judge. A separate bill was filed to the order of another judge denying the defendant's motion to recommit the auditor's report.

1. The motion to recommit the report was addressed to the discretion of the court. It was based mainly on alleged erroneous rulings of law made by the auditor; but these were adequately dealt with by the trial judge, who fully instructed the jury on the law applicable to the case. So far as the motion sought a report of the evidence, no adequate reason for granting it was shown. There was no abuse of discretion in denying the motion. *Tobin* v. *Kells*, 207 Mass. 304.

2. It is provided in G. L. c. 221, § 56 " . . . the court at the trial shall exclude any finding of fact which appears in the report [of the auditor] to be based upon an erroneous opinion of law, or upon inadmissible evidence." In reliance on this, the defendant excepted to the judge's refusal to exclude various portions of the report. It contended that most of the findings were based upon an alleged " finding of law that the doctrine of *res ipsa loquitur* applies to this case." The first answer is, as stated by the trial judge, that there was no such " finding of law " by the auditor. What the auditor apparently did was to draw an inference of fact that the running of the vessel into the visible bridge, under ordinary weather conditions, unexplained, indicated that those in charge of the vessel were negligent. But even assuming that the auditor did apply the doctrine of *res ipsa loquitur*, and that he was not warranted in doing so, the defendant was not prejudiced thereby, nor by what the auditor said about presumptions from the unexplained facts. The trial judge instructed the jury that the auditor's findings on the law were immaterial; and told them to disregard entirely the cases cited. He fully instructed them that the burden was on the plaintiff to prove that negligence on the part of those handling the Herman Winter caused the accident: and that the mere fact that the vessel hit the bridge would not be enough to prove such negligence. In short, if there was any erroneous ruling of law made by the auditor, it did not injuriously affect the substantial rights of the defendant. *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 208 Mass. 121, 133.

In like manner the statement of the auditor, that those in charge of the steamers "were bound to have full knowledge of shoals and other obstacles or difficulties in navigation regularly existing there " was apparently a finding of fact, based upon evidence before him. Even if regarded as a statement of law, it does not differ from the view expressed by the judge in his charge, to which no exception was taken, in the words: " The captain of a vessel in going through the canal . . . would be expected to know the usual current, the usual obstructions, the various things about it that

make navigation in that particular place dangerous or not dangerous; he is expected to know how to handle his vessel in that place before he goes into it."

The other portions of the report excepted to were either findings of fact, or were addressed to alleged immaterial evidence which was not reported, and hence not within the provisions of G. L. c. 221, § 56. The admissibility of evidence that other vessels had passed through the canal safely will be considered later, as it was raised in the trial court. It follows that there was no prejudicial error in the refusal of the trial court to exclude certain portions of the auditor's report.

3. Exceptions to evidence. We consider only those argued by the defendant, and in the order they appear on its brief.

Extracts from the official "log" book of the Cape Cod Canal, showing the time at which the Herman Winter arrived at the Buzzards Bay, Bourne and Sagamore bridges, was admitted subject to the defendant's exceptions. It appeared that the witness Whipple, the despatcher stationed at Buzzards Bay, made the original entries from which the log was made up, that he personally saw the steamer at the Buzzards Bay Bridge, and that he got reports by telephone from the other bridges. The record was kept under the direction of Captain Colbeth, the superintendent and general manager, in the regular course of duty. As matter of fact, it added nothing to the direct testimony of witnesses and the deck log of the steamer, except as to the time when the Herman Winter reached Bourne Bridge. The evidence was admissible. *Donovan* v. *Boston & Maine Railroad,* 158 Mass. 450. *Commonwealth* v. *Dorr,* 216 Mass. 314, 319. *Bradford* v. *Boston & Maine Railroad,* 225 Mass. 129, 134.

There was no error in permitting the witnesses Whipple (the despatcher) and Vallier (the operator of the draw at Sagamore Bridge) to refresh their recollection from the canal "log." It was immaterial who made the memorandum, if it recalled the facts to the memory of the witness. *Commonwealth* v. *Burton,* 183 Mass. 461, 470. *Allwright* v. *Skillings,* 188 Mass. 538. *Mayberry* v. *Holbrook,* 182 Mass. 463.

The hypothetical questions to experts on navigation, familiar with conditions in the canal, are challenged because they assumed that the Herman Winter was going through the canal at an average speed of twelve miles. But there was evidence to that effect, both in the findings of the auditor and the testimony as to the ship's time in passing known distances between the bridges.

We are unable to say that there was error in the admission of the evidence that other vessels passed through the canal in safety about this time. The contention of the defendant, that, although the steamer was carefully handled, she became unmanageable by reason of canal conditions, raised an issue as to what those conditions were. The judge carefully limited the application of the evidence to that issue, instructing the jury, among other things, ". . . So the evidence with regard to vessels is admitted for the purpose of enabling you to see, if you can, what conditions are likely to exist, whether or not there were conditions particularly with regard to the depth of water which would make the handling of the vessel impossible. For that purpose it is admitted and for that purpose you should consider it. But you should not say that it shows these people were negligent at this time, that that same vessel went through at some other time or that other vessels of like shape and bulk have gone through there safely."

Finally, there was no error in admitting the testimony of witnesses expert in navigation in the canal, in substance, that they knew of no conditions existing there which would cause a ship like the Herman Winter to become unmanageable. It was a proper subject for opinion evidence, on the issue raised by the defendant; and the qualification of the witnesses as experts was not disputed. *Transportation Line* v. *Hope*, 95 U. S. 297. *Price* v. *Hartshorn*, 44 N. Y. 94. *Parsons* v. *Manufacturers' Ins. Co.* 16 Gray, 463. *Commonwealth* v. *Snell*, 189 Mass. 12, 25.

4. As to the defendant's requests for rulings:

Those numbered 2, 4, 5, 8, 11, 12 and 16 were given in substance, in the body of the charge. *Herrick* v. *Waitt*, 224 Mass. 415. Assuming the correctness as abstract

propositions, of those numbered 10, 34, 35, 37, 38, 39 and 41, there was no issue for the jury which called for giving them. The narrow issue for the jury, as the judge stated more than once, was whether those in charge of the vessel used reasonable skill and care in handling it, under the conditions existing when the accident happened. Having fully instructed the jury upon the principles of law applicable, he was not called upon to give requests, such as 24, 27, 29, 30 and 42, which singled out certain portions of the evidence and asked for rulings as to their effect. *Ayers* v. *Ratshesky,* 213 Mass. 589. *Altavilla* v. *Old Colony Street Railway,* 222 Mass. 322.

The alleged legal duty of the plaintiff to maintain the canal at a depth of twenty-five feet at mean low water was involved in the request numbered 31, and in exceptions to the judge's charge on that subject. There was evidence, especially from soundings made on August 14, 1918, that within six hundred feet of the Sagamore Bridge were places where the water was less than twenty-five feet at mean low water. The charter (St. 1899, c. 448, § 3) provided that " Said canal, when constructed, shall have a depth of not less than twenty-five feet at mean low water . . . ; " and that " when completed it should be under the jurisdiction of the harbor and land commissioners." It is not disputed that it had the prescribed depth when completed. The plaintiff took possession of the canal six days before the accident. The trial judge instructed the jury, " . . . There was no obligation in law to maintain it [the canal] always exactly at twenty-five feet. It was subject to such circumstances as nature imposes upon it, and the fact, if it was a fact, that at some of the points at some particular time it might happen to be less than twenty-five feet in depth, does not make the Canal Company or the Director General of Railroads in fault. He does not guarantee or he is not held in law to guarantee the mean depth of twenty-five feet at all times and under all circumstances." The judge's construction of the charter seems to us correct. But in any event there was no prejudicial error in the refusal to give request numbered 31, nor in the portion of the charge on

this subject which was excepted to; in view of the uncontrolled finding of the auditor that "the Canal at the time of this accident was reasonably safe and convenient for vessels of the type, size and draft of the Herman Winter."

As to the requests numbered 26 and 43: the only negligence of the plaintiff suggested was the alleged failure of duty to maintain the canal at a depth of twenty-five feet at mean low water. That is disposed of by what we have just said. It is to be noted that the steamer was drawing only fifteen feet; that there were several feet of water under her keel throughout the channel; and vessels like the Herman Winter were daily using the canal. And it certainly could not be ruled that the plaintiff assumed the risk of this accident.

Finally, as to number 33, the trial judge instructed the jury, substantially as requested, that the plaintiff must prove that those in charge of the vessel were careless at the time of the accident.

The foregoing disposes of all the exceptions on which the defendant apparently relies in its voluminous brief. Without further discussion in detail we deem it sufficient to say that an examination of the entire record discloses no prejudicial error in the conduct of the case.

*Exceptions overruled.*