**Thomas PARKS**
**v.**
**Walter PALMER**

**No. 123987**

Superior Court
Commonwealth of Massachusetts

**July 17, 1981**

Edwin C. Hamada, counsel for plaintiff
Jeffrey A. Miller, counsel for plaintiff
Walter E. Palmer, counsel for defendant
Laurence F. Simcock, counsel for defendant
William F. Nourse, counsel for defendant

## RULINGS AND ORDERS ON THE PLAINTIFF'S MOTION FOR RELIEF ON THE MASTER'S REPORT, THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, THE DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE MASTER'S REPORT, THE DEFENDANT'S OBJECTIONS TO THE MASTER'S REPORT, and THE DEFENDANT'S MOTION TO RE-REFER TO MASTER

### INTRODUCTION and BACKGROUND

This action involves claims brought against an attorney ("the attorney") by his former client ("the client"). The client seeks an accounting and remittance of monies allegedly due. The client also asserts that he has suffered actual and consequential damages due to the attorney's purported breach of fiduciary duty, malpractice and negligence. Finally, the client claims that the attorney's alleged activities amount to unfair and/or deceptive acts and/or practices within the scope of G.L. c. 93A. This action was referred to a Master by a "facts not final" order of reference. A jury trial has been claimed. The master filed his very well-done report on February 5, 1981. The motions referred-to above are currently before the Court for decision.

### RULINGS, ORDERS AND MEMORANDUM OF DECISION

The general rule is that where findings made by a master are not final, objections to the master's report are made by means of a motion to recommit requesting that the report be recommitted to the master for correction of claimed errors or omissions. Nolan, 9A Massachusetts Practice Series, **Civil Practice**, sec. 891. The granting of such a motion is discretionary and no objection can be made to the denial of such a motion. **J. W. Grady Co. v. Herrick**, 288 Mass. 304 (1934). If the requested recommittal is denied the parties may have claimed errors or omissions in the report corrected by the judge at the time of trial.

If an objection to a master's report is that a subsidiary finding is not supported by the evidence before the master the objecting party cannot as a matter of right seek to compel the master to prepare a summary of the evidence as can be required in non-jury cases. The objecting party must apply to the court for an order directing the master to summarize. If the court directs that a summary be prepared the requesting party must show that the evidence was taken by an approved reporter and that the master has been furnished with a transcript of the evidence material to the objection raised. Any such transcript is to be provided to the master at the expense of the party seeking the summary. Sup. Ct. R. 49, secs. 7 and 8. The granting of such a motion is also within the discretion of the judge. **Tobin v. Kells**, 207 Mass. 304 (1911).

In this action the parties have requested essentially three kinds of relief with respect to the report filed by the master. Both parties request that certain portions of the report be stricken; they also ask that the report be recommitted to the master for further findings and, finally, they each claim that certain of the

findings set out in the report are unsupported by the evidence before the master. The client has requested that a summary of the evidence be ordered with respect to certain issues. Although most of the attorney's objections are based upon a claim of insufficiency of evidence, he has made no motion for a summary of the evidence relative to the claimed objectionable portions of the report; rather, he has moved to recommit. It should be noted that if a motion to recommit states the specific grounds upon which a claim of insufficiency of evidence is based, a court in its discretion may order a summary of the evidence pertinent to the issues raised. Sup. Ct. R. 49, sec. 8.

A motion to strike portions of a master's report may be granted in the discretion of the court if the master's conclusions are not warranted by his or her subsidiary findings or if the findings are based on the application of incorrect principles of law. Where the findings are not mutually inconsistent, contradictory or plainly wrong, a motion to strike should be denied. A motion to recommit should be granted where either the report is not clear; or the master's conclusions are not justified by his or her subsidiary findings; or no evidence or insufficient evidence is introduced to justify the subsidiary findings; or the findings are based upon inadmissible evidence.

After having reviewed the master's report filed in this action and the motions and objections of both parties pertaining thereto, I deny each and every one and I conclude that the master should be required (and I so order) to summarize the evidence only with respect to the following Findings: (1) Finding numbered 39(d), where the master disallowed the attorney's claimed deduction of $1,933.69. With respect to that finding it is clear that Jenny Signore was paid. The master disallowed the attorney's claimed offset on the basis that there was no credible evidence to show conclusively that the amount was paid out of the attorney's clients' funds account. However, the attorney's assertion and supporting affidavit of Jenny Signore raise genuine questions as to the master's finding. The evidence should be summarized because without such a summary the finding becomes **prima facie** evidence on that issue. (2) Finding numbered 60 which relates to the agreement between the client and the attorney as to the 4 1/2% of the gross rental income charge. With respect to that finding the report is unclear as to the specific terms of the agreement. The client has requested a summary of the evidence relating to the 4 1/2% fee asserting that there was no evidence to support the finding that the agreement covered income which was not collected by the client. The client is entitled to a summary of the evidence so that his challenge to the sufficiency of the evidence to support the finding is preserved for trial. (3) Finding numbered 80 which relates to the November 13, 1973 payment by the client. That finding is inconsistent in that there is an unaccounted $40 payment by the client to the attorney. Additionally the nature of this payment should be ascertained because the application of the statute of limitations may depend upon whether it was payment on a particular claim or a general commitment to repay all of the debts. See, **Provident Institute for Savings in Town of Boston v. Merrill,** 311 Mass. 168 (1942).

The remaining objections advanced by the parties should not be allowed for the reasons that there are no inconsistencies between and among the subsidiary facts found by the master and his general findings and conclusions do not appear to be based on erroneous conclusions of law. Most of the objections advanced are generally restatements of the evidence before the Master. The objections do not contradict the master's findings; rather, they seek to supplement by additional information the circumstances which lead to a particular finding.

With respect to the client's motion for summary judgment, a fair reading of the, again, superlative master's report and the other pleadings and papers filed in this action indicates that there has probably never been a case which had so many facts disputed between the parties and which requires to be tried. Almost all of the issues in dispute between the parties to this action involve issues of fact which are in dispute and on that basis there is no conceivable ground upon which the client's motion for summary judgment should be allowed. In sum, except with respect to the three summaries of the evidence referred-to above, I order that the master's report as filed be confirmed and I rule that this action be scheduled as soon as possible for trial in order to resolve it once and for all.

Finally, I could not agree more with the master's conclusion that, at least on the facts here, the client has no c. 93A claim against the attorney. The Massachusetts courts have yet to address the issue of whether a breach of an attorney's fiduciary duty is actionable under G.L. c. 93A. For guidance this Court must examine the purpose of G.L. c. 93A. Since c. 93A is patterned on the Federal Trade Commission Act, 15 U.S.C. sec. 45(a)(1), reference should be made to the various federal cases which have interpreted "unfair and deceptive acts and practices" within the meaning of the Federal Trade Commission Act. Additionally, a review of the decisions of state courts which have addressed the question of an attorney's liability under consumer protection legislation will assist in that analysis.

As early as 1964 the Federal Trade Commission articulated criteria relative to a determination of unfairness under the Act. Those criteria were originally stated in the FTC's Statement of Basis and Purposes for Trade Regulation Rule 408, 29 Fed. Reg. 8324, 8355 (1964). The Supreme Court approved of those criteria in **Federal Trade Commission v. Sperry**

**and Hutchinson**, 405 U.S. 233, 244 (1972). It is important to note, however, that the concept of "unfair acts" is separate and distinct from "deceptive acts" and it is difficult, if not impossible, to specifically define all acts which would be encompassed within those terms. The important considerations include:

> . . . whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law or otherwise . . . whether . . . it is within at least the penumbra of some common law, statutory, or other well-established concept of fairness; whether it is immoral, unethical, oppressive or unscrupulous; whether it causes substantial injury to consumers . . .

In **Commonwealth v. DeCotis**, 366 Mass. 234 (1974), the Supreme Judicial Court employed those criteria in arriving at its determination that a mobile home park operation had practiced an "unfair act" within the scope of G.L. c. 93A. See also, **PMP Assoc., Inc. v. Globe Newspaper Co.**, 366 Mass. 593 (1975).

Those factors clearly promote the very broad policy considerations which underlie the Federal Trade Commission Act. The Act is designed to create greater equality in the marketplace for consumers and small businessmen in their transactions with larger "corporate giants." The Massachusetts Supreme Judicial Court stated, in **Schuback v. Household Finance Corp.**, Mass. Adv. Sh. (1978) 1153, that unfairness is to be measured not simply by determining whether particular conduct is unlawful by statute or otherwise but also by analyzing the effect of the conduct on the public. See also, **Reiter Oldsmobile, Inc. v. General Motors Corp.**, Mass. Adv. Sh. (1979) 2091. The Court has also declared that the objectionable conduct must obtain a "level of rascality that would

raise an eyebrow of someone inured to the rough and tumble of the world of commerce.'' **Levings v. Forbes & Wallace, Inc.,** Mass. App. Adv. Sh. (1979) 2043.

Applying these principles to this action, I conclude that the attorney's conduct as such did not rise to the level of misconduct required to impose liability under G.L. c. 93A. There is no claim that the attorney has co-mingled the client's funds with his own.[1] His "informal" arrangement with his client may have led to poor record keeping and negligently performed services, yet it neither affects a public interest nor rises to the level of immorality and oppressiveness required by G.L. c. 93A.

Only two courts have addressed the issue of whether an attorney's misconduct is actionable under the relevant state consumer protection legislation. In **Lightfoot v. MacDonald,** 544 P.2d 88 (Wash. 1976), an attorney's alleged breach of contract was held not to be within the state of Washington's Consumer Protection Act.[2]

The Court reasoned:

> Since the purpose of the act is to protect the public interest, it is natural to assume that the legislature, in granting a private remedy in R.C.W. 19.86.090, intended to further implement the protection of that interest. It follows that an act or practice of which a private individual may complain must be one which also would be vulnerable to a complaint by the Attorney General under the act. A breach of a private contract affecting no one but the parties to the contract, whether the breach be intentional or negligent, is not an act or practice affecting the public interest.

**Id.** at 90. The **Lightfoot** Court, in replying on the effect of the conduct on a ''public interest,'' seems to have employed the same kind of analysis as the Federal Trade Commission when it enunciated the standards by which to judge an unfair act. However, the Texas Court of Appeals reached a different result when confronted with the issue. In **DeBakey v. Staggs,** 605 S.W.2d 631 (Texas 1980), an attorney failed to obtain in a timely manner a change of name for his client and the client was harmed by this neglect. The Court held that the Texas Deceptive Trade Practices Act applies to the purchase or acquisition of legal services. It is important to note, however, that the Court had a clear indication through the relevant legislative history that the Texas Legislature intended that legal services be within the scope of the act.[3] That case is clearly distinguishable from this action.

I, therefore, conclude that the attorney in this action is not subject to liability under G.L. c. 93A in that the claim involves a purely private transaction which does not affect a public interest.

**Paul G. Garrity**
**Justice of the Superior Court**

---

[1] A different result might well be warranted if such a claim was asserted. In **Nader v. Citron,** 327 Mass. 96 (1977), the plaintiff alleged that the defendant violated an agreement with the plaintiff and breached a fiduciary duty by "co-mingling and spending as (his) own the funds (he) received in payment of the plaintiff's lectures and ... fail(ing) to make the agreed upon payments to ... (the plaintiff)." Counsel for the defendant conceded the sufficiency of this count of the complaint to withstand a motion to dismiss. Therefore, the court did not address the question of whether the trial judge correctly denied the defendant's motion to dismiss this count for failure to state a claim upon which relief could be granted.

[2] R.C.W. 19.86.090.

[3] Physicians and health care providers had been specifically exempt from the provisions of that Act where the litigation was based on negligence. An amendment which would have exempted **all** professional services was tabled. The Court concluded that it was reasonable to assume that the legislature intended legal services to be within the provisions of the state.