JOHN O'BRIEN *vs.* NEIL McNEIL & another.

Norfolk.  March 16, 1908. — May 22, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Equity Jurisdiction*, Accounting.  *Trust.  Mortgage.  Interest.  Contract.  Equity Pleading and Practice*, Exceptions to master's report.

One, who, at the request and for the benefit of the mortgagor and owner of the equity of redemption of certain real estate, purchased the real estate at a sale made in foreclosure of the mortgage for $8,000, taking the title in his own name, afterwards with the mortgagor's consent procured a loan of $6,000 for which he gave his note bearing interest at four per cent and secured by a new mortgage upon the property.  Subsequently, at a time after such purchaser had made several payments of interest upon the new mortgage note, the original mortgagor by a bill in equity sought from him an accounting and reconveyance of the property, subject to the new mortgage.  A master to whom the suit was referred charged the plaintiff in the accounting with interest at the rate of six per cent upon the $8,000 which the defendant paid for the property at the foreclosure sale, and also with the payments of four per cent interest which the defendant had made on the new mortgage, but credited the plaintiff with but four per cent interest on the $6,000 which the defendant had received on the new mortgage; and the plaintiff excepted.  *Held,* that the exception must be sustained, since the defendant received the $6,000 to his own use and therefore should be charged and the plaintiff credited with six per cent interest thereon.

From the report of a master to whom a bill in equity for an accounting had been referred, it appeared that on January 1, 1902, a third person held a promissory note of the plaintiff dated August 6, 1901, for $10,989.38, payable three months after its date and bearing interest payable monthly from July 3, 1901, at the rate of eight per cent per annum, that the note was secured by collateral upon which the holder was threatening to foreclose, and that, at the request of the plaintiff, the defendant paid to the holder of the note on January 16, 1902, the sum of $11,528.62 and took the note by indorsement and the collateral, to secure repayment to him of the amount then advanced for the plaintiff.  The report did not state how the sum of $11,528.62 was made up.  In the statement of the account, the master charged the plaintiff with the principal amount of the note and with interest thereon at the rate of eight per cent from the date of the note to a date after that on which the defendant took up the note for the plaintiff, and also charged the plaintiff with "Amount advanced by the defendant to the plaintiff in excess of" the note, $539.24.  The plaintiff excepted to the last named item, contending that it appeared from the report that the plaintiff was thus charged twice with interest upon the amount of the note.  *Held,* that the exception should be sustained.

Exceptions to material findings of fact by a master will not be sustained where the evidence upon which the findings were made is not reported and it does not appear that the findings are inconsistent with the rest of the report.

A master, to whom was referred a bill in equity for an accounting and reconveyance brought by one, who had been the mortgagor and owner of the equity of

redemption of certain apartment house property, against one, who, at his request and for his benefit, had purchased the property at foreclosure sale, ruled that the defendant stood in the position of a mortgagee in possession, and the plaintiff in that of a mortgagor seeking to redeem, found that certain payments by the defendant for the premises for new heating apparatus, new window screens, and new receptacles for garbage and ashes were necessary and proper, and that an alteration in the front of the building, which changed a window into a door with steps so that the front room could be used for a small store, was not a damage to the estate, but enabled the defendant to rent the property continuously at an advanced rent. There was no finding in terms as to whether the alteration was or was not beneficial, but the master reported at length as to the nature of the surrounding real estate. The account charged the plaintiff with the defendant's outlay for the above purposes. *Held*, that on the facts reported it did not appear that the finding of the master in making the charge was wrong.

BILL IN EQUITY, filed in the Superior Court for the county of Norfolk, October 2, 1905.

The bill alleged that the defendant McNeil had advanced money from time to time for the plaintiff to prevent foreclosure of mortgages on properties of the plaintiff, among them being apartment house property numbered 266 to 276 on Bowdoin Street in that part of Boston called Dorchester, and had, as security, taken assignments of the mortgages; that he had purchased for the plaintiff at a foreclosure sale real estate at 269 St. Botolph Street in Boston, advancing the money therefor, and, by agreement with the plaintiff, had had the property conveyed to the defendant Campbell, who held it subject to the payment to McNeil of all indebtedness of the plaintiff to him; that, against the plaintiff's objection, McNeil had foreclosed the mortgages which had been assigned to him, and had purchased the properties at the foreclosure sales, and afterwards had sold them, but that he still held the property on St. Botolph Street; that the accounts between the parties were complicated, and that the plaintiff believed that there was nothing due from him to McNeil. The plaintiff, however, offered in the bill to pay any amount that might be found to be due from him to McNeil, and prayed for an accounting and a reconveyance of the St. Botolph Street property, subject to a mortgage placed thereon, as stated in the opinion.

The case was referred to a master, who filed a report containing the findings stated in the opinion, and the following findings, not set out, but referred to, in the opinion.

" On October 26, 1904, [at which time McNeil was in posses-

sion of the Bowdoin Street property] McNeil received from the board of health of Boston two notices, one ordering him to remove within six days 'a nuisance, source of filth, and cause of sickness,' namely, 'defective drainage, need of garbage and ash barrels,' on the premises numbered 270 Bowdoin Street; the other ordering him to remove a nuisance, namely, 'dirty yards and need of ash and garbage barrels,' on the premises numbered 266 to 276 Bowdoin Street. On January 30, 1905, he received a notice from the water department of Boston that certain water fixtures in the house No. 269 St. Botolph Street were out of order; and a further notice from the board of health, dated November 10, 1905, that unless the nuisance previously complained of was abated by November 15, a complaint would be made to the court.

" During the years 1904 and 1905, McNeil received numerous complaints, both oral and written, from the tenants of the Bowdoin Street property, of insufficient heat in their apartments and of needed repairs. Thereupon he caused necessary repairs to be made from time to time, and, after a personal examination of the premises, he put new heating apparatus into two of the houses in November, 1904, substituting hot water for steam, against the plaintiff's objection, at an expense of about $1,150. He also supplied the six houses with twelve boxes, two for each house, for garbage and ashes, at an expense of about $160, and further supplied the houses with new window screens at an expense of $127.20. These three expenditures above mentioned were contested by the plaintiff, but I find that they were necessary and proper. . . .

" On July 24, 1905, McNeil wrote to the plaintiff as follows: ' In the house, 269 St. Botolph Street, there has got to be a new heating apparatus put in before fall, as the old boiler gave us a great deal of trouble all last winter, and the repairs cost more than it is worth. Let us hear from you on this matter without delay.' On July 25, the plaintiff replied to this letter as follows: ' I will say, as I have always before, I cannot authorize you to make any repairs or contract any expense on my account.' The boiler in question finally burst, and McNeil put in a new one during the month of December, 1905, at an expense of $173. . . .

" McNeil, without the plaintiff's knowledge or consent, altered the front of [an] apartment [in the St. Botolph Street house] by changing the middle window into a door with steps, so that the front room could be used for a small store, upon the application of a person who hired the apartment thus altered at an advanced rent, and it has been so occupied since this alteration, which did not interfere with access to the upper stories. . . . The plaintiff contended that the cost, aggregating about $100, of [such alteration] . . . should be disallowed; and that he should be allowed the sum of $1,000 as damage caused to the property by such alteration. At the request of counsel, I took a view of the premises. The house stands on the corner of St. Botolph Street and Gainsborough Street, facing on the former street. The building occupied by the New England Conservatory of Music, which faces on Huntington Avenue, runs back to St. Botolph Street, with one of its sides on Gainsborough Street, opposite the side of the house in question. Diagonally across from the latter, on the corner of Gainsborough Street and St. Botolph Street, and facing on the former, is a long one story car-barn occupied by the Boston Elevated Railway Company for storing its structures used for repairing the overhead wires and also for storing voting booths belonging to the city. Directly opposite the house in question is a double three-story apartment house of the same class, and there are similar houses around the corner on Gainsborough Street. Next to the adjoining house, No. 267 St. Botolph Street, the land is vacant for some distance, and a similar condition exists on the opposite side of the street. The store in the house in question is a small grocery. Taking into consideration the appearance of the immediate neighborhood in its entirety, I find that the premises in question have not been damaged by the alteration made by McNeil.

" I rule that McNeil stands in the position of a mortgagee in possession, and the plaintiff in that of a mortgagor seeking to redeem; and that McNeil is entitled to charge against the plaintiff only for such repairs as have been beneficial to the several estates; and I find that the repairs which McNeil has made to the houses on Bowdoin Street and St. Botolph Street, respectively, were beneficial to those estates."

Other facts are stated in the opinion.

Various exceptions to the master's report were filed by the plaintiff, the substance of which are sufficiently indicated in the opinion. There was a hearing on the exceptions before *Sherman*, J., who overruled them all and made a decree that, on payment to McNeil of the sum of $1,395.24, the plaintiff should have the conveyance which he sought. The plaintiff appealed.

*J. A. McGeough*, for the plaintiff.

*G. F. Ordway*, for the defendant.

HAMMOND, J. This is a bill for an accounting, and it is before us upon the plaintiff's appeal from a decree of the Superior Court. The only questions argued before us arise upon the exceptions to the master's report.

Although there are two defendants, McNeil is the only real defendant in interest, and we shall use the word " defendant " to describe him alone.

The first exception raises the question whether the defendant is to be charged with interest at the rate of six per cent per annum upon the $6,000 which was received by him on a mortgage placed by Campbell, acting as his agent, on the St. Botolph Street estate. As to this the master reports as follows : " Upon the mortgage of $6,000 above mentioned, McNeil has paid interest at the rate of four per cent to October 1, 1906, and at the rate of four and one half per cent since that date ; and he is entitled to charge the sums so paid against the plaintiff. The latter contends that he is entitled to receive from McNeil interest on the principal sum at the rate of six per cent. But I have treated this mortgage as a transaction standing by itself, and instead of putting it into the account on the same basis as the other amounts credited as partial payments and allowing interest accordingly, I have treated it as a credit to be deducted at the end of the account, and, in view of the circumstances, I rule that the plaintiff is not entitled to receive any greater interest than that paid by McNeil, and I allow one to offset the other."

Even if the transaction be treated as a separate matter, we think that the plaintiff is entitled to interest at the rate of six per cent upon this sum. One Wheeler held a first mortgage of $6,500 on the estate ; and there was thereon also a second mort-

gage for $2,600, signed by one Burton and belonging to the plaintiff but held by Gately as a part of the collateral security for the indebtedness due him from the plaintiff. The plaintiff was the owner of the estate subject to these two mortgages. At the time when the plaintiff applied to the defendant for assistance in the Gately matter, Wheeler was threatening to foreclose the first mortgage, and McNeil, being apprised of this fact, advised the plaintiff to allow the sales to go on, and he promised the plaintiff he would attend it. The defendant attended "the sale with the plaintiff and bid in the property for $8,000, on December 31, 1901, paying $600 at the time of the sale and the balance of $7,400 later. The conveyance was made to Campbell [who took for the defendant] who, on February 5, 1902, at McNeil's direction, and with the plaintiff's consent, placed a new mortgage of $6,000 on the property." The defendant received this $6,000 to his own use.

It thus appears that the defendant advanced to the plaintiff $8,000, and shortly afterwards received $6,000, the proceeds of the Campbell mortgage. The master has charged the plaintiff interest at the rate of six per cent upon the $8,000 advanced by the defendant, but has not credited him with any interest upon the $6,000 received by the defendant. It is manifest that, if the plaintiff is to be charged with interest upon the $8,000, he should be credited with interest at the same rate upon the $6,000. But it is to be noted that the interest already paid by the defendant at the rate of four per cent and four and one half per cent has enured to the benefit of the plaintiff, inasmuch as it has been paid to reduce a charge upon the estate on St. Botolph Street, the only property now held by the defendant and which the plaintiff desires to redeem. There must therefore be deducted from the interest upon the $6,000, at the rate of six per cent, the amounts already paid by the defendant as interest, and only the difference is to be credited to the plaintiff. The first exception must be sustained.

The second exception raises the question whether the master has twice charged against the plaintiff the interest upon the note which Gately held against the plaintiff. This was a note dated August 6, 1901, for the sum of $10,989.38, signed by the plaintiff and payable to Thomas F. Reddy, three months after

date, with interest payable monthly from July 3, 1901, at the rate of eight per cent per annum, and it was indorsed to Gately, who held the same with certain securities as collateral as set forth in the report. Gately was threatening to foreclose some of the mortgages which he thus held as security. Thereupon the plaintiff, about January 1, 1902, applied for financial assistance to the defendant, who lent him the sum of $11,528.62, by check dated January 16, 1902, and payable to Gately, and it was paid. The Reddy note held by Gately was indorsed without recourse by Gately to the defendant and delivered to him. At the same time the securities held as collateral were properly assigned by Gately to the defendant.

It is not stated how the sum of $11,528.62 due Gately and paid to him by the defendant for the plaintiff was made up. The face of the Reddy note was only $10,989.38, and, even if no interest at all * had been paid upon it, there would have been due as interest on January 16, 1902, only $469.17, making the sum total due on the note at that date only $11,458.55, which is about $70 less than the sum the defendant paid to Gately. The master has charged the plaintiff full interest upon the note, as though none ever had been paid on it up to the time of the settlement with Gately, and he has also charged the plaintiff with "Amount advanced by McNeil to the plaintiff in excess of latter's note to Reddy indorsed to McNeil, $539.24," which sum is just the difference between the face of the note and the sum advanced by McNeil. If therefore the Reddy note was the only claim Gately had against the plaintiff, it is plain that the master has charged the plaintiff twice with the interest on the Reddy note. And such is the contention of the plaintiff. On the other hand, the defendant argues that according to the allegations in the bill the plaintiff owed Gately $11,528.62, and that there is nothing in the report to sustain the contention that the $539.24, or any part of it, was for interest on the note, and

---

* From the master's statement of the account it appears that, by sales of the collateral which secured the Reddy note, the amount of the note and interest was paid on November 7, 1904. The account charges the plaintiff with the principal of the note and with interest thereon, figured by partial payments, from its date to November 7, 1904. The first item of interest is "Int. on same to February 1, 1902, . . . at 8 % — 5 m. 25 d. — $427.36."

further, that the master has found to the contrary by the manner in which he has described the item, as above stated.

The matter is not very clearly set forth in the report. We are not satisfied with the defendant's explanation. It is certain that the master has charged the plaintiff with interest on the note from July 3, 1901, the time when it began to run. The fair inference is that no interest ever had been paid at the time of the settlement with Gately, and that there was due Gately on January 16, 1902, the face of the note with interest from July 3, 1901, amounting in all, as above stated, to $11,458.55. If, therefore, the statement of the master that the $539.24 represents an amount paid by McNeil "in excess of the . . . [plaintiff's] note to Reddy" is to be taken literally, then the amount owed by the plaintiff to Gately was not $11,528.62, but $11,458.55, plus $539.24, making the sum of $11,997.79. This interpretation of the report is not satisfactory. We think that the only reasonable interpretation of this entry that the $539.24 was in excess of the note is that it was in excess of the principal of the note. If it is to be thus interpreted, then it seems plain that some portion of the interest on this note has been charged twice against the plaintiff. It well may be that the $70 above named may have been for costs and expenses which may have been incurred by Gately. The result is that the second exception must be sustained.

The third, fourth and seventh exceptions are based upon the alleged state of the evidence. As the evidence is not reported and the facts upon which the exceptions are respectively based are not set out in the report, these exceptions must be overruled.

The fifth exception raises the question whether the plaintiff should be charged with the cost incurred by the defendant in providing for the Bowdoin Street property a new heating apparatus, new window screens, and also new receptacles for garbage and ashes. It appears that the master ruled that McNeil stood in the position of a mortgagee in possession, and the plaintiff in that of a mortgagor seeking to redeem. The statute R. L. c. 187, § 20, provides that the mortgagee shall be allowed for all amounts "expended in reasonable repairs and improvements, . . . and for all other necessary expenses in the care and man-

agement of the land." The master has found all these expenses to be necessary and proper. The evidence is not reported and there is no fact stated in the report which is inconsistent with such a finding. This exception therefore is overruled. *Woodward* v. *Phillips*, 14 Gray, 132.

For similar reasons the sixth and eighth exceptions also must be overruled. It is true that the master does not distinctly say that the charges to which these exceptions respectively relate were necessary, but the correspondence, set out in the report, which took place between the plaintiff and the defendant indicates that there was need of a new heating apparatus, in the St. Botolph Street house, and we understand that the finding that the change was beneficial, when taken in connection with the facts reported, is in substance a finding that it was a reasonable repair. There is more doubt as to the cost of cutting the doorway of the house and substituting a door for the middle window in the front of the lower apartment, but upon the facts appearing in the report we cannot say that the master was wrong in charging the plaintiff with the cost of the changes.

The ninth exception must be overruled because it appears from the decree that the mortgage on the Sharon property had been discharged before the decree was passed.

The result is that the seven last exceptions are overruled, but the first and second exceptions are sustained. The final decree must be reversed, and the case is to stand for further hearing upon the matters to which the first and second exceptions respectively relate.

*So ordered.*