PROXIMITY MANUFACTURING COMPANY *vs.* ISADOR WOLF & others.

Suffolk.   January 20, 1914. — February 28, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Contract,* Modification, Consideration, Construction, Performance and breach. *Waiver.  Election.*

Where, because of disputes which arose between the parties to a contract in writing for the sale and purchase of cotton waste, another contract in writing is made by them modifying the terms of the original contract somewhat and providing that, after the expiration of the original contract and settlement by the purchaser for amounts shipped to him, the seller shall make a certain "cash settlement or rebate" to the purchaser, there is a sufficient consideration for such modifying contract.

A manufacturer agreed in writing to sell to a dealer his entire output of cotton waste for a year, the purchaser agreeing to make payments "on the tenth of each month for all waste shipped . . . during the previous month."   Because of disputes between the parties a modifying agreement was made by which it was provided that, at the expiration of the original contract, the manufacturer would give the dealer "a rebate and after settlement by" the dealer "of the waste shipped or billed to" him at the end of the year, the manufacturer would "make cash settlement or rebate" to the dealer in a certain ratio.  *Held,* that

the dealer had no right to the rebate unless and until he had made at the specified times the payments called for by the original contract.

A manufacturer made an agreement in writing with a dealer for the sale of his entire output of cotton waste for a year, and thereafter the parties modified the agreement so that, after the dealer had made the payments called for by the contract, he should be entitled to a certain cash payment as a rebate. The dealer failed for several months to make the payments and the manufacturer wrote to him asking for an immediate payment of a sum shown to be due by a statement of account, enclosed with the letter, which included as a credit the rebate agreed upon. The dealer did not pay the sum demanded, and an attorney for the manufacturer wrote to the dealer stating that the dealer was not entitled to any rebate because of his failure to make the required payments. The manufacturer thereupon brought an action against the dealer to enforce payment. *Held,* that the manufacturer had not waived his right to insist upon the payments being made by the dealer before the giving of any rebate, and that he had not made a binding election to waive such right.

CONTRACT for a balance alleged to be due under an agreement in writing dated February 12, 1907, between the plaintiff and the defendants, doing business under the names and styles of W. Wolf and Sons and the New England Waste Company, for the purchase by the defendants at stated prices of the entire output of cotton waste from mills of the plaintiff for a year ending April 30, 1908. Writ dated May 6, 1911.

The defendants filed a declaration in set-off, claiming a rebate of $3,269.67, hereinafter described.

In the Superior Court the case was tried before *Aiken,* C. J. It appeared that the contract provided for payments by the defendants "on the tenth of each month for all waste shipped to us during the previous month." On September 24, 1907, an agreement in writing was made between the parties, in substance as follows:

"Referring to contract of February 12 for the waste output [of certain mills, including the plaintiff] . . . regarding which a difference has arisen between these various mills and our company [the defendants], we desire to adjust same and wish to state that it will be agreeable with our company to have this difference adjusted in the following manner:

"We agree to accept the entire output of the above mentioned mills in accordance with the contract as originally made, with the further understanding that all waste which has been billed to us by these mills is to be settled for in accordance with the invoices rendered. All waste which the mills now have on hand is

to be billed and settled for in accordance with the original contract during this month. E. & C. E. All waste which the mills may accumulate from now until the expiration of this contract is to be billed and settled for in accordance with the original contract. . . .

"It is a part of this modification to our original contract that the above mills will at the expiration of contract of February 12 give us a rebate and after settlement by us of the waste shipped or billed to us by them at the end of April 1908, make for us a memorandum of the total quantity of waste shipped during the 12 months, ending April 30th, 1908, and on ⅙ of this total quantity of [or] two months' output, make cash settlement or rebate [to] us so as to make the net costs to us F. O. B. the respective mills for these two months output on certain grades of waste" at certain specified rates.

Thereafter further differences arose between the parties.

On May 25, 1908, the situation was that the plaintiff had shipped to the defendants all the waste covered by the contract except five hundred and eighty-seven bales of motes, the price of which according to the contract of February 12, 1907, was in all $3,255.49. These bales the plaintiff held on storage for the defendants at their request and because of their failure to give shipping instructions. Upon issues submitted to the jury respecting these bales it was determined that the defendants were indebted to the plaintiff therefor.

On May 25, 1908, the plaintiff wrote to the defendants a letter, enclosing a statement and memoranda. The letter was as follows:

'We herewith enclose statement showing amount due $10,312.57. This is after crediting your account with $3,269.67, allowance due you in accordance with agreement of Sept. 24, 1907. Kindly check this account and let us have remittance covering this balance by return mail. You will note considerable of this account is nearly sixty days past due."

On June 15 the defendants paid the balance shown by the statement excepting the $3,255.49. The plaintiff wrote to the defendants, stating that it did not understand the reason for the deduction, and a conference followed.

On July 6, 1908, counsel for the plaintiff wrote to the defendants demanding payment of the sum of $3,255.49, above mentioned,

and stating that by reason of the fact that the defendants had failed to pay, in accordance with the provisions of the contract of September 24, 1907, they were not entitled to the rebate therein mentioned and therefore owed the plaintiff both for the goods sold and delivered against which the defendants were attempting to offset the rebate and for the motes in issue.

The plaintiff sought to recover in this action (1) $3,269.67 for goods sold and delivered, about which there was no dispute but against which the defendants claimed the right to set off the rebate of $3,269.67, (2) the $3,255.49 above described and (3) interest.

The issue as to the $3,255.49 having been determined by the jury in the plaintiff's favor, the. Chief Justice ruled that the plaintiff was entitled to the further sum of $3,269.67 for goods sold and delivered with interest thereon at the rate of six per cent per annum from July 10, 1908, and that the defendants were not entitled to the rebate which they claimed of $3,269.67, and accordingly directed a verdict for the plaintiff in the sum of $8,320.85, of which $1,794.69 was interest, and directed a verdict for the plaintiff on the defendants' declaration in set-off.

Thereupon the defendants paid the plaintiff the amount of $3,255.49 with interest and costs to date without prejudice to the plaintiff's rights as to the balance of the verdict, and the Chief Justice reported the case for determination by this court, judgment to be entered for the defendants if the defendants were entitled to the rebate or allowance of $3,269.67; otherwise, judgment to be entered for the plaintiff in the amount of $3,269.67 and interest and costs.

*Lee M. Friedman,* for the defendants.

*D. A. Ellis,* (*P. Rubenstein & S. M. Whalen* with him,) for the plaintiff.

SHELDON, J.  We consider that under our decisions there was a sufficient consideration for the modifying agreement of September 24, 1907, and for the plaintiff's promise made therein to allow to the defendants the rebate therein mentioned.  Some of these decisions are collected in *Rowe* v. *Peabody,* 207 Mass. 226, 234, and *Tobin* v. *Kells,* 207 Mass. 304, 311.

But by this agreement the defendants' right to that rebate was made conditional upon the defendants' payment of the amounts

which should have become due and payable under the original agreement. The stipulation of the modifying agreement is that the plaintiff should "at the expiration" of the original agreement "give us [the defendants] a rebate and after settlement by us of the waste shipped or billed to us by them at the end of April, 1908, make for us a memorandum of the total quantity of waste shipped during the twelve months ending April 30th, 1908, and on $\frac{1}{6}$ of this total quantity of [or] two months' output, make cash settlement or rebate [to] us" as therein stated.

These words can mean only that the defendants are to have this rebate after settlement by them of what had become due from them for waste shipped under the original agreement. And the only mode of settlement provided for in the original agreement was by payment to be made by sending a check "on the tenth of each month for all waste shipped to us [the defendants] during the previous month." No change was made in this provision by the modifying agreement of September 24. We cannot avoid the conclusion that the defendants' right to the rebate was to accrue only after making their monthly payments and only on condition of their doing so. It was not a discount to be allowed upon settlement, as in *Commonwealth* v. *Strauss*, 188 Mass. 229, and some other cases relied on by the defendants. It was a final rebate or cash payment to be made by the plaintiff to the defendants only after the termination of the period covered by the original agreement and after full settlement thereunder should have been made by the defendants. *Lamb* v. *Lamb*, 11 Pick. 371, 378. *Hooper* v. *Hooper*, 9 Cush. 122, 128. *Treadwell* v. *Cordis*, 5 Gray, 341, 353. *State* v. *Schwarzschild*, 83 Maine, 261, 265. It was not both a rebate and a cash payment that the plaintiff was to make, but only one allowance, and what was added in the modifying agreement after the word "rebate" was added by way of explaining the meaning in which that word was used. There is abundant authority for the view which we take. *Tufts* v. *Kidder*, 8 Pick. 537. *Makepeace* v. *Harvard College*, 10 Pick. 298. *Colton* v. *Salomon*, 38 Vroom, 73. *Nassau* v. *Guttridge*, 41 Vroom, 191. *Perin* v. *Cathcart*, 115 Iowa, 553. *National Distilling Co.* v. *Cream City Importing Co.* 86 Wis. 352. *St. Louis & San Francisco Railway* v. *Rierson*, 38 Kans. 359. *Missouri Edison Electric Co.* v. *Bry*, 88 Mo. App. 135. *Missouri Edison Electric Co.* v.

*Steinberg Hat & Fur Co.* 94 Mo. App. 543.    *Olmstead* v. *Distilling & Cattle-Feeding Co.* 77 Fed. Rep. 265.    *Messenger* v. *Woge,* 20 Col. App. 275.

We find no evidence of waiver or of a binding election by the plaintiff not to stand upon its right.    It might have been willing to allow the rebate if the defendants had merely made some delay in payment; but that affords no evidence that it had bound itself to waive the stipulation that had been made in its favor. *Lambeth Rope Co.* v. *Brigham,* 170 Mass. 518, 523.

The defendants have argued only the question of their right to the rebate or allowance.    Under the terms of the report, judgment must be entered for the plaintiff in the amount of $3,269.67, with interest from July 10, 1908.

*So ordered.*