BARBER ASPHALT PAVING COMPANY *vs.* HENRY O. STAPLES.

Suffolk.    March 20, 1923. — June 21, 1923.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract*, Construction, Performance and breach. *Sale. Damages*, For breach of contract. *Evidence*, Presumptions and burden of proof, Foreign law. *Conflict of Laws.*

Under a contract in writing for the sale " of a cargo not to exceed 600 M . . . mixed fir and spruce staves," the purchaser is entitled to receive approximately six hundred thousand staves, and the contract is not complied with by a tender of a shipment of one hundred thousand staves.

Where, at the trial of an action by the purchaser against the seller for damages resulting from a refusal by the seller to deliver staves as required by the contract above described, there was evidence tending to show that the plaintiff, after the defendant's refusal, purchased staves to fulfil his requirements, in good faith seeking to procure them at a reasonable price, it was proper for the judge to refuse to instruct the jury in substance that the measure of the plaintiff's damages was the difference between the contract price and what the plaintiff paid as a purchase price; and he properly left it to the jury to determine whether the plaintiff acted in good faith in an endeavor to obtain the staves at a reasonable price, and instructed them that, if the plaintiff did so and had to pay a price greater than the contract price, the damages to which he was entitled were the difference between the price set forth in the contract and what he had to pay.

Where, at a trial, an interpretation of the common law by the courts of another State is material and no evidence of such interpretation is introduced, it is presumed that such interpretation is the same as that by the courts of this Commonwealth.

CONTRACT for damages suffered by reason of an alleged breach of a contract in writing for the sale by the defendant to the plaintiff " of a cargo not to exceed 600 M No. 1 28½″ long by ⁷/₁₆″ thick by ⁵/₈″ bigle [bilge?] mixed fir and spruce staves with an allowance of hardwood not to exceed 10%, at $14.00 per M, delivered f.o.b. Maurer, N. J., by schooner." Writ dated October 4, 1920.

· In the Superior Court, the action was tried before *Quinn*, J. Material evidence, material requests by the parties for rulings and material portions of the charge to the jury are described in the opinion. There was a verdict for the plain-

tiff in the sum of $2,384.78; and at the request of the parties the judge reported the action for determination by this court upon an agreement of the parties, that (a) if the rulings of law made were correct, judgment was to be entered on the verdict; (b) if the plaintiff's contention, that in determining the question of damages the jury as a matter of law was bound by the amount paid by the plaintiff to one, from whom he purchased to make good the failure of the defendant to sell to him, was correct, judgment was to be entered for the plaintiff in the sum of $4,800; (c) if the exceptions saved by the defendant and described in the opinion, or any of them should be sustained, judgment was to be entered for the defendant, and that (d) in any case not covered by the foregoing, such order was to be entered as law and justice might require.

*J. M. Maguire*, for the plaintiff.

*F. G. Bauer*, (*J. M. Fowler* with him,) for the defendant.

PIERCE, J. This is an action of contract to recover damages for breach of a written contract for the sale by the defendant and the purchase by the plaintiff of a certain quantity of barrel staves. The contract was embodied in a letter dated September 22, 1919, addressed to the defendant, who did business under the style of Pattens Pond Lumber Company at 69 Summer Street, Boston, Massachusetts; and, without repeating the title of the defendant, read as follows: " Gentlemen: — We confirm our purchase today from your Mr. Staples of a cargo not to exceed 600 M . . . mixed fir and spruce staves with an allowance of hardwood not to exceed 10%, at $14.00 per M, delivered f.o.b. Maurer, N. J., by schooner. Shipment to be made promptly; terms of payment — net cash upon delivery. These staves are to be inspected by our inspector at shipping point and his acceptance or rejection to be considered final."

This instrument was signed by the plaintiff and by the defendant on September 22, at the plaintiff's office in New York City and was later followed by a " purchase order " addressed to the defendant on one of the plaintiff's printed forms, the material parts of which read as follows: " Confirming contract with you dated Sept. 22, 1919. Schooner

cargo of staves (not to exceed 600,000 staves), to comply with the following specifications: Price: $14.00 per M, f.o.b. Maurer, N. J. — schooner delivery. Shipment: Promptly. Inspection: By our inspector at shipping point for grade, and his acceptance or rejection to be final."

On May 19, 1920, the plaintiff wrote to the defendant: " Will you please advise us when you will ship the schooner load of staves called for on this order? "  To this the defendant replied: " We shall not be able to ship the small schooner-load of staves to you, probably before August or September."

On May 26, 1920, the plaintiff wrote: " We have your letter of May 20th, stating that you will not be able to ship ' the small schooner load of staves ' before August or September.  Our order was placed with you for these staves on October 14th last, and you will note that the cargo was to be shipped ' promptly ' thereafter. . . . we can agree to no further extention of time.  We also note that in your letter of May 20th you use the phrase ' small schooner load of staves.'  We assume that you do not use this phrase as an indication that you intend to ship to us less than the 600,000 staves specified in our contract, we refer, however, to your use of this phrase in order to avoid any possible misunderstanding in the future.  We now give you formal notice that unless we receive advices from you within ten days from this date to the effect that you will ship us a cargo of approximately 600,000 staves on or before June 30th next, we shall consider that our contract with you has been broken by your default, in which event we shall purchase these staves in the open market and hold you responsible for the difference in cost if any."

On May 29, the defendant answered: " Replying to your letter of the 26th, will state that the phrase ' smallsc hoonerload of staves ' in our letter of May 20th and previous letters, means just that.  If it is possible for us to get a schooner by June 30th, we can rush our work and get the staves ready by that time, but the quantity of staves will be nowheres near 600 M, — probably will not exceed 100 M.  I have a vessel in mind that we can get, which has about that capacity. Now, if this is acceptable, and if you wish them shipped by

June 30th, we will rush things as much as possible and ship by that time . . . ."

To this letter, on June 3, the plaintiff replied that " The statements contained therein do not constitute compliance with the terms of our letter to you of May 26th. The notice given to you in that letter will expire on June 7th. If on or before that date you have not complied with notice contained in our letter of May 26th, we propose thereupon to telegraph to our Mr. F. H. Goldey, who is now in New England on similar business, directing him to purchase a cargo of approximately 600,000 staves complying in all respects with the specifications of your contract with us. In so far as the cost of the staves so purchased may exceed the price at which you are under contract with us, the excess will be charged to your account. If, on the contrary, between this date and June 7th, you comply with the terms of our letter of May 26th, we shall be very pleased to have you carry out the contract. If you elect to send us a vessel of 100,000 staves in pursuance of your letter of May 29th, we beg to notify you that we shall decline to receive same as complying with the terms of your contract with us."

On June 8, the defendant replied: " I am in the country, and am sending this letter to my office to be typewritten. Replying to your letter of the 3rd, will state that the schooner-load of staves will be ready for your inspection June 30th, at our bill or wharf at Surrey, Maine. It will be in every way according to the contract. It will not exceed 600 M, and probably will not exceed 100 M. I, of course shall not ship until they are inspected and accepted by your agent, according to contract. If I am to regard your letter of the 3rd as a cancellation, I shall dispose of the staves if I can, after June 30th. Please note that I say now as in former letters, that the cargo will not exceed 100 M staves."

On June 10, the plaintiff telegraphed the defendant: " Your letter June eight as your tender of delivery was not made within the ten days covered by our notice to you dated May twenty-six and as you have not tendered a cargo in compliance with your contract with us we hereby decline to receive the same in pursuance of our letter to you of May

twenty six we have instructed our agent to purchase a cargo of six hundred thousand staves and hold you responsible for the difference in price."

At the trial the plaintiff " conceded . . . that if the defendant was entitled to tender in performance of the contract the small cargo load of staves referred to in the foregoing correspondence, such tender was, under the circumstances of this case, made seasonably."

At the close of the evidence the defendant requested and the trial judge refused to make the following rulings of law:

" 3. Under the language of the contract of September 22, 1919, between the plaintiff and the defendant, the defendant was only bound to deliver such quantity of staves as would make up the cargo of a schooner, and in no event more than six hundred thousand staves.

" 4. For the purpose of perfecting his contract, the defendant had a right to use any size of schooner which it was reasonable for him to use in carrying staves from Surrey, Maine, to Maurer, New Jersey, subject to the limitation that he could not compel the plaintiff to accept more than six hundred thousand staves.

" 5. Under the terms of the contract of September 22, 1919, it was not necessary for the defendant to ship a cargo which would equal or approximate six hundred thousand staves, provided he shipped the full cargo of such a schooner as it was reasonable for him to use in shipping staves from Surrey, Maine, to Maurer, New Jersey.

" 6. If the plaintiff is entitled to recover at all, it is only entitled to recover its damages on such a quantity of staves as would make up the cargo of the smallest schooner which it would have been reasonable for the defendant to use in shipping staves from eastern Maine to New Jersey."

The judge refused these requests and each of them and instructed the jury in this regard, subject to the exception of the defendant, as follows: " I instruct you as a matter of law that the Barber Asphalt Paving Company were entitled to receive approximately six hundred thousand staves, — not necessarily that amount but in the neighborhood of that amount, and that this contract was not complied with

by the tender of a shipment of one hundred thousand staves. I instruct you as a matter of law that this defendant has violated this contract and is responsible in damages to the plaintiff . . . ." No question was raised at the trial or is now argued that the contract was nonenforceable at its inception for want of mutuality of obligation. The judge rightly instructed the jury in this regard as follows: " Did the plaintiff through this selling agent make a reasonable purchase, a fair purchase; did he on account of the rise of the market over which he had no control, purchase at a price larger than the contract called for; if he was compelled to do that, acting in good faith and using an honest effort to secure a good figure, the best figure obtainable and had to pay more, his damage is the difference between the price set forth in the contract and what he had to pay, and has the plaintiff sustained that burden? Did he make a purchase in good faith, did he go to the market, did he try to replace those staves by other staves of the same character and quantity and did he have to pay more? He says he did. On the other hand the defendant said he could have secured them at a better price if he used due diligence, a very proper thing for you to take into consideration. Has the burden been sustained by the plaintiff that he did the best he could under all the circumstances, if he did he is entitled to that difference as damages with interest." *Hall* v. *Paine,* 224 Mass. 62, 65. The construction of the contract by the judge expressed in his charge to the jury was right and the requested rulings of the defendant were properly refused. There was no difficulty in procuring at the place of shipment, Blue Hill Bay, Maine, a schooner with a carrying capacity of six hundred thousand staves. A witness for the defendant testified in substance that a schooner carrying a million staves had come into the bay before December, 1919, and that schooner carrying one hundred and fifty thousand staves and up had been used, and that any schooner so far as size went could safely make the voyage to Maurer, New Jersey. The parties by their agreement manifestly intended to buy and sell a cargo of staves to be transported by a schooner from Blue Hill Bay to Maurer, such cargo " not to exceed

six hundred thousand staves." The words " not to exceed "
in connection with the remainder of the contractual words
are to be read with the dual meaning of approximation and
limitation. See in this connection *Brawley* v. *United States*,
96 U. S. 168, 171; *Norrington* v. *Wright*, 115 U. S. 188, 204.

In relation to the measure of damages the plaintiff's re-
quested instructions· that " If you find for the plaintiff you
must find damages equal to the loss which directly and
naturally resulted from the defendant's failure to perform
its contract. In this case that loss is the difference between
the contract price and what the plaintiff had to pay for
six hundred thousand staves to take the place of those
contracted to be supplied by the defendant " were properly
refused. In the absence of evidence to the contrary, in
the state of facts disclosed, there is a presumption that the
common law rule in relation to damages for the breach of
a contract to buy or sell personal property is the same in
all jurisdictions governed by the common law. The rule
given the jury is that of the Commonwealth of Massachu-
setts and is presumed to be that of Maine and of New Jersey
and governs this case whether the contract sued upon be that
of Maine or New Jersey. *John B. Frey Co. Inc.* v. *S. Silk,
Inc.* 245 Mass. 534.

It follows in accordance with the terms of the report that
judgment is to be entered on the verdict.

*So ordered.*