EMMANUEL KURLAND & others, trustees, *vs.* MASSACHUSETTS AMUSEMENT CORPORATION.

MASSACHUSETTS AMUSEMENT CORPORATION *vs.* EMMANUEL KURLAND & others, trustees.

Suffolk. December 7, 1939. — October 31, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Landlord and Tenant*, Modification of lease, Rent, Repairs. *Contract*, Construction, Performance and breach. *Practice, Civil*, Exceptions: whether saved, whether error harmful, what questions open. *Evidence*, Relevancy, Cumulative. *Error*, Whether harmful.

The question of the amount of abatement of rent to which a lessee was entitled under a lease providing for an abatement in case the leased premises became untenantable, where, after they had become untenantable, he restored them under an agreement with the lessor upon whom the duty of restoration rested under the lease, depended upon the time reasonably required for the completion of the restoration, and properly was submitted to the jury under suitable instructions.

Under an agreement between the lessor and the lessee in a lease at an annual rent payable in monthly instalments, reducing the amount of the annual rent for a certain year on "the express condition" of prompt payment of the rent when due and providing that, if the monthly rent should remain unpaid for five days after becoming due "in any one month, then and in that event, this agreement shall become . . . null and void, and the original rent reserved in said lease shall at once become due and payable, with the same effect and in the same manner as if this agreement had not been" made, a failure of the lessee to pay within the five days any monthly instalment of rent in that year entitled the lessor to the full original rent for the entire year, not merely for the portion of the year remaining after the breach.

An instruction which stated an erroneous construction of a provision in a lease was harmless where it appeared that there was no evidence to which the jury could apply it to the injury of the excepting party.

An exception to a failure of a trial judge to refer in his charge to an alleged objectionable portion of opposing counsel's closing argument to the jury brought nothing to this court where no objection was made and no exception was saved at the time of the argument.

Upon an issue whether a lessee was diligent in restoring motion picture theatre premises to tenantability under an agreement with the lessor,

upon whom rested the duty of restoration, it was proper to admit evidence, which was offered by the lessor who contended that the lessee had unreasonably delayed and which tended to show a motive or reason for delay in that a part of the period during which the restoration was in progress was the poorest of the year in that business.

The questions, whether a lessee of a moving picture theatre, in making repairs and' renovations under an agreement with the lessor upon whom under the lease rested the duty to make them, acted reasonably and in good faith in determining the extent and nature of the work required, and whether the work was completed at a fair and reasonable cost, on the evidence were left to the jury under suitable instructions.

An excepting party was not harmed by error in admitting certain testimony which was merely cumulative to other extensive evidence properly admitted.

An exception to the admission of evidence, stated to the trial judge to be based solely on a specific ground, gave the excepting party no standing in this court to contend that the admission was erroneous on another ground not called to the attention of the trial judge.

Two ACTIONS OF CONTRACT.   Writs in the Superior Court dated May 18, 1936, and July 27, 1936, respectively.

The first action was brought by Emmanuel Kurland, Catherine D. Boyle and Anne Stoneman, trustees of Downtown Investment Association under a declaration of trust, against Massachusetts Amusement Corporation.   The second action was by the defendant in the first action against the plaintiffs therein.

The actions were tried together before *Sheehan,* J.

From the record it appeared that the issues centered about a sublease dated August 15, 1929, by one David Stoneman to the assignor of Massachusetts Amusement Corporation of premises known as the Capitol Theatre in Springfield.   While Stoneman still held his title as lessor, he made on July 27, 1932, with a predecessor in title of Massachusetts Amusement Corporation, and in February, 1934, with that corporation, the agreements respecting reduction of rent for the years 1933 and 1934, respectively, which are the basis of the second count in the first action. Stoneman assigned his interest as lessor to the plaintiffs in the first action on January 2, 1936, and in May, 1936, (the day of the month being omitted) assigned to them his rights to recover on the claims set out in the second count in that action.   The cases appeared to have been tried on

the assumption that, in all matters in issue, Stoneman represented the trustees as well as himself.

The Massachusetts Amusement Corporation alleged exceptions in both cases.

*H. W. Packer*, (*L. Weyburn* with him,) for Massachusetts Amusement Corporation.

*E. Kurland*, for Emmanuel Kurland and others, trustees.

RONAN, J. The first action is in contract. The plaintiffs seek in the first count of the declaration to recover $10,000, the rent for April and May, 1936, of a theatre in Springfield, in accordance with a lease given on August 15, 1929, to the defendant's assignor. They seek in the second count to recover $9,000 — the difference between the amount of rental fixed by the lease and the amount paid by the defendant during 1933 and 1934, at the rate as reduced by two written agreements, one for each of said years — on the ground, as the plaintiffs allege, that the defendant did not pay the reduced rental promptly and punctually at the times designated in the lease, as it was required to do by the provisions of each of these two written agreements. Besides a general denial, the defendant set up in its answer a claim for abatement of rent for the period from March 19, 1936, to April 10, 1936, both inclusive, during which, the defendant contends, it was prevented from using the theatre on account of the damage sustained by the flooding of the Connecticut River. The answer also alleged that the plaintiffs waived the prompt payment of rent provided for in each of the two written agreements. The jury found for the plaintiffs on the first count in the sum of $9,032.26, which represented the rent for April and May, 1936, less an abatement, together with interest on the amount found due. They also found for the plaintiffs on the second count in the sum of $9,000 with interest, which represents the difference between the lease rental and the amounts paid during 1933 and 1934 by the defendant at the rate fixed by the written agreements.

The second action is brought by the defendant in the first action to recover $10,655.48 for the fair and reasonable cost incurred by it in repairing and restoring the theatre

after it had been damaged by the flooding of the Connecticut River, which, it is alleged, the lessors, the defendants in this action, were obligated under the terms of the lease to repair and restore. The defendants' answer contained a general denial, an allegation of payment, and averments that the amounts expended by the plaintiff were excessive, that some of the repairs were negligently made, that some were made necessary by the negligence of the plaintiff, and that some of the items were for repairs that the defendants were not required to make under the lease. The jury found for the plaintiff in the sum of $3,908.22.

Both cases were referred to an auditor and were then tried together. The plaintiffs in the first case are hereinafter referred to as the lessors and the defendant in that case is referred to as the lessee. The cases are here on various exceptions taken by the lessee.

We consider the first case. The Gilmore estate, the owner of the premises, executed, in 1919, a lease of the premises expiring on August 31, 1944. One Stoneman acquired the interest of the lessee in this lease in 1929, and subleased the premises to a predecessor in title of the present lessee for the term from September 1, 1929, to August 31, 1944, at an annual rental of $60,000, payable in monthly instalments of $5,000 each, in advance on the tenth day of each month and upon being shown that certain payments had been made by the lessor therein to the Gilmore estate. The lessee was required to keep the interior of the theatre and the furniture and equipment in good repair. The furniture and equipment, which were put in the theatre by the lessee to replace existing furniture and equipment, were, upon the termination of the lease, to become the property of the lessor. If the premises were damaged by any cause beyond the control of the lessee, then the lessor covenanted that he would promptly repair or restore the premises to their former condition unless the owner of the property exercised its option to terminate the underlying lease. If the premises were rendered untenantable or unfit for presenting public performances as a result of such damage or the making of repairs, then the rent was to be abated in accordance

therewith. Stoneman's rights were assigned in 1936 to those called "lessors" in this opinion.

The Connecticut River flooded a part of the city of Springfield in March, 1936. At midnight on March 18, 1936, water began to flow into the basement of the theatre. The lessee installed several pumps to keep the water out of the basement, but the river kept rising and it became necessary at eight o'clock in the evening of March 19, 1936, to close the theatre. About two thirds of the theatre floor, which sloped toward the stage, was submerged, and the seats and carpet in that area were under water for four days. The paint and plastering were injured and the curtains and other equipment damaged. There was evidence that, on March 23, 1936, Stoneman told an official of the lessee "to go ahead and do the work as expeditiously and as economically as possible, the question of who should pay and for what items to be left open and decided later." The liability of payment of the expense, it could be found, was to be determined in accordance with the lease. The repair and restoration of the premises were completed by the lessee and the theatre was reopened on April 11, 1936.

The lessee has not paid the rent for April and May, 1936, as it had not been reimbursed for the amount expended in the repair of the theatre and the amount to be allowed for the abatement of the rent had not then been settled. The lessee contended, and introduced evidence to show, that it had acted in good faith and with reasonable diligence in restoring the theatre, and that it was entitled to an abatement of rent from March 19, 1936, to April 11, 1936, amounting to $3,763.43. The condition of the theatre after the flooding was narrated in great detail in the auditor's report and by oral testimony, and the work of various kinds that it was necessary to do, together with the time required for its performance, was fully shown by the evidence. Besides, there was testimony that the damage ought to have been repaired and the theatre fully restored to its former condition and public performances resumed long before they were. The time reasonably required for the completion of the work determined the period during

which the lessee was entitled to an abatement of the rent, and the ascertainment of that period was properly submitted to the jury. *Willey* v. *Fredericks*, 10 Gray, 357. *Cary* v. *Whiting*, 118 Mass. 363. *Rich* v. *Smith*, 121 Mass. 328. *Ware* v. *Hobbs*, 222 Mass. 327.

On July 27, 1932, Stoneman and the lessee's assignor executed a written agreement, reducing the rental for 1933 from $60,000 to $54,000, which provided "that the time for the payment of the rent stipulated in said lease and as modified herein is of the essence of the contract"; that the agreement was made "upon the express condition . . . that the rent . . . will be paid promptly on the day that it is due"; and that if the monthly rent shall "remain unpaid for five days after it is due, in any one month, then and in that event, this agreement shall become ipso facto, null and void, and the original rent reserved in said lease shall at once become due and payable, with the same effect and in the same manner as if this agreement had not been entered into." A similar agreement was made in February, 1934, providing for a reduction of the rent during 1934 from $60,000 to $57,000. The lessors contend that the failure of the lessee to pay a monthly instalment of the reduced rent during the year for which the reduction was granted constitutes a breach of the agreement and makes the lessee liable to pay the original rental of $60,000 for that year. The lessee contends that there was no breach of these two agreements; that if there were a breach it was waived; and that the only effect of a breach would be to restore the rent to the rate fixed in the lease for merely that part of the unexpired year mentioned in the agreement. The jury could find that there was a breach of these two agreements, and they could further find that there was no waiver of them by Stoneman.

Each of these agreements dealt with a reduction in the annual rental for a designated calendar year, and if any monthly instalment was not paid at the prescribed time the rental fixed by the original lease was to become at once due and payable. If the agreement terminated at this point, there might be strength in the lessee's conten-

tion that the lease rental was to become effective only for the remaining months of that year. But the agreement did not state that the old rate would be restored merely for the remaining months; instead, it expressly provided that the rent reserved in the lease not only would become due and payable but would become so "with the same effect and in the same manner as if this agreement had not been entered into." It is presumed that the parties thought that they had fully set forth their agreement and that the terms they employed appropriately and adequately expressed the bargain they had made. The inducement for the reduction was the prompt payment of the rent. The agreement covered a period of one year. That was the basis of the whole agreement. No intention is shown to grant or receive a reduction for one or a few months. The reduction to be granted was a single reduction for a single period of time. But the lessee was not entitled to the benefit in reduced monthly payments of rent unless it had made prompt payments of all the instalments during the year. That was "the express condition and stipulation" upon which "this agreement is made." The contention of the lessee ignores the provision, contained in each agreement, that a breach is to have the same effect as if the agreement were not made. It cannot have this effect until the rent is restored to the rate fixed by the lease for the period included in the agreement. Effect must be given to these words, and it is difficult to see how the parties are to be put in the same position that they would be in if the lease had never been modified, if we were to hold that the lessee was entitled to retain the benefit of the reduced rental up to the time of the breach and thereafter that all it would lose was the reduced rental for the succeeding months. The parties agreed upon what would be the effect of the breach and we cannot change the terms. Each of these agreements was entire and indivisible, and the lessee was entitled to receive all or none of the reduction, depending upon its due performance of the agreement. Time for payment of the monthly instalments at the reduced rate was expressly made the essence of the agreement, *Mans-*

*field* v. *Wiles*, 221 Mass. 75; *Preferred Underwriters, Inc.* v. *New York, New Haven & Hartford Railroad*, 243 Mass. 457; *Chatalian* v. *Di Fusco*, 244 Mass. 513; *Donovan Motor Car Co.* v. *Niles*, 246 Mass. 106, and the failure to make any payment when due not only constituted a breach but excused the lessors from performance of their part of the agreement. *Griggs* v. *Moors*, 168 Mass. 354. *Frati* v. *Jannini*, 226 Mass. 430. *Gorman* v. *MacPherson*, 250 Mass. 241. Williston, Contracts (Rev. ed.) § 846. The granting of the stipulated reduction for one year was conditional, and the effect of nonperformance by the lessee was wholly to relieve the lessors from the obligation to allow any reduction. *New England Concrete Construction Co.* v. *Shepard & Morse Lumber Co.* 220 Mass. 207. *O'Connell* v. *Root*, 254 Mass. 218. *Stoughton Lumber Co.* v. *Ogren*, 276 Mass. 111. In *Proximity Manuf. Co.* v. *Wolf*, 217 Mass. 196, 200, the parties entered into an agreement that, if the defendants made the monthly payments for goods in accord with an existing agreement, the defendants would be entitled to a rebate. It was held that the defendants if they failed to make the payments prescribed by the original agreement were not entitled to the rebate. "We cannot avoid the conclusion that the defendants' right to the rebate was to accrue only after making their monthly payments and only on condition of their doing so." See also *Tufts* v. *Kidder*, 8 Pick. 537; *Makepeace* v. *Harvard College*, 10 Pick. 298, 304. In the case at bar the judge was right in ruling that the failure of the lessee to make any monthly payment at the time prescribed by the rental reduction agreement deprived it of the reduction for the year covered by the agreement.

The lessee saved certain exceptions in the first case. The lease between the parties required the lessee to pay the annual rental in monthly instalments of $5,000 in advance on the tenth day of each month, but it also provided that the lessee should not be required to make any monthly payment until the lessors had furnished it with satisfactory evidence that the lessors had paid to the Gilmore estate all instalments of rent and all other payments required to

be made by them up to the date of the payment of the last preceding monthly instalment of rent under their lease with the Gilmore estate. Each of the two agreements relating to a reduction of the rental provided for the prompt payment of the rent when it was due under the lease, but the agreements were to become null and void if a monthly instalment remained unpaid for five days after it was due. There was, therefore, error in the instructions to the effect that in case the jury found that the evidence of payment by the lessors to the Gilmore estate was received after the tenth and before the fifteenth day of the month, the lessee "would not be entitled to five additional days after the date of receipt of such evidence before the 15th of the month." The lessee, however, was not harmed. The breach of the agreement for 1933 depended upon the payment of the instalment for March, 1933. Stoneman testified that he furnished evidence on March 8, 1933, to the lessee of his payment to the Gilmore estate, and the auditor reported that there was no evidence when such evidence was furnished to the lessee and that the payment on March 16, 1933, was not shown to be a breach of the agreement. There being no evidence that the receipt for payment made by Stoneman to the Gilmore estate was given to the lessee between the tenth and fifteenth days of March, 1933, the instruction could not apply to the payment by the lessee on March 16, 1933. In other words, the instruction did not apply to the first agreement. This instruction was material only upon the agreement for the reduced rental for 1934, and only in so far as it related to the rent for July, 1934. If this July payment did not constitute a breach, the lessee is not helped if there were other breaches of this agreement. The evidence, including the auditor's report, shows there was no dispute as to the dates upon which the rent was paid for May and June, 1934, and that these payments were later than the time permitted by the agreement. These delayed payments, in the absence of waiver, constituted a breach of this second agreement. The lessee expressly conceded that the lessors were not estopped from denying that there was a waiver. The ver-

dict for the full amount claimed by the lessors shows that the jury found that there was no waiver.

The lessee did not except to the lessors' closing argument on the question of waiver,[1] and could not thereafter save an exception for the first time by excepting to the failure of the judge to refer to this matter in his charge. *Commonwealth* v. *Cabot*, 241 Mass. 131. *Commonwealth* v. *McKnight*, 289 Mass. 530, 548. There was no error in the failure to give the lessee's twenty-third request, that the effect to be given to the acceptance by the lessors of the monthly rent checks at the reduced rate could not be lessened by the complaints made by the lessors to the lessee on account of the delayed payments of rent. The issue for the jury was that of waiver and the judge was not required to discuss fragments of that issue. *Barnes* v. *Berkshire Street Railway*, 281 Mass. 47, and cases cited.

The lessee was claiming an abatement of rent from March 19, 1936, to April 10, 1936. The last date was Good Friday. The lessee excepted to the admission of testimony which could be understood to relate to the moving picture business to the effect that business during Holy Week is the poorest of the year. The diligence employed in renovating the theatre was in issue. In support of their contention that there was unreasonable delay, it was open to the lessors to show a motive or reason for the alleged delay. There was no error. *Hanson & Parker, Ltd.* v. *Wittenberg*, 205 Mass. 319, 327. *Bock* v. *Wall*, 207 Mass. 506. *Hutchinson* v. *Plant*, 218 Mass. 148.

The principal question in the second case is the amount the lessee was entitled to recover for the expenses incurred in repairing and restoring the premises. The water first appeared in the theatre on March 18, 1936, and it was not until March 23, 1936, that the lessors agreed with the lessee that the latter should go ahead and do the work as expeditiously and as economically as possible. The lessee con-

---

[1] The record states: "Counsel for the plaintiff in his argument to the jury stated that, subject to any instructions which the court might give in the matter, consideration was necessary to support a waiver." No objection appeared to have been made and no exception saved thereto. — REPORTER.

cedes in its brief that it was required to employ reasonable efforts to minimize and avert damage arising from the flood when the water began to reach the theatre, and that on and after March 23, 1936, it was authorized to proceed with and complete the work of restoration in accordance with its agreement with the lessors.

The lessors contend that the lessee was negligent in not saving more of the equipment from damage; that there was no need for pumping until the river had started to recede; and that it was not necessary to purchase several hundred new backs and seats for the chairs. The judge instructed the jury that the chairs, carpets, draperies and certain other property in the theatre were owned by the lessors, and that it was the lessors' duty under the lease to repair and restore such property to the condition it was in before the damage resulting from the flood; that there was "a question as to the necessity and propriety of doing some of the things that were done and the failure to do things that reasonably should have been done to make the work less expensive"; that the lessors were not liable for the expense incurred in pumping out the water from the theatre before the lessors authorized the lessee to do the work of repair and restoration unless Carlson, the lessee's engineer, or Hoffman, an officer of the lessee, had reasonable cause to believe that there was imminent danger of being compelled to close the theatre, which might be averted by pumping; and that it was for the jury to determine whether Hoffman or those under him exercised the foresight of persons of ordinary caution in like circumstances. The issue of the lessee's negligence was properly submitted to the jury. The jury were instructed that the lessee could not recover the expense incurred for new equipment unless they should find that it was not reasonably possible in a reasonable time to repair and restore the premises in any other way. They were repeatedly told that the lessee could not recover unless it showed that it was reasonably necessary to do the work for which it charged. The lessors did not agree to pay whatever expense the lessee sustained. The lessee was bound to act in good faith and to act reasonably in deter-

mining the extent and the nature of the work required for the repair and restoration of the theatre and in making certain that the work was completed at a fair and reasonable cost. We are of opinion that the instructions were correct. *O'Brien* v. *McNeil*, 199 Mass. 164. *C. W. Hunt Co.* v. *Boston Elevated Railway*, 199 Mass. 220. *French* v. *Meyer*, 220 Mass. 451. *MacFarlane* v. *Thompson*, 241 Mass. 486. *Barber Asphalt Paving Co.* v. *Staples*, 246 Mass. 40. *Stegemann* v. *Kelley*, 267 Mass. 450. *Stevens* v. *William S. Howe Co.* 275 Mass. 398. *Altobelli* v. *Montesi*, 300 Mass. 396. Williston, Contracts (Rev. ed.) § 1404. If the landlord failed to make the repairs, which he was bound to do under the lease, then the tenant could recover the actual expense incurred in making such repairs if the tenant proved that such repairs were necessary and were reasonable in amount. *Grennan* v. *Murray-Miller Co.* 244 Mass. 336. *A. W. Banister Co.* v. *P. J. W. Moodie Lumber Corp.* 286 Mass. 424.

The lessee saved exceptions in this second case. The denial of its motion to strike out certain portions of the report of the auditor which dealt with the liability of the lessors under the lease to repair and restore the chairs and other equipment, and with the auditor's alternative findings on damages, was free from error. All of these matters were sufficiently and correctly covered in the charge. The substantial rights of the lessee were not injuriously affected by the ruling of the judge. *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 208 Mass. 121. *Director General of Railroads* v. *Eastern Steamship Lines, Inc.* 245 Mass. 385. *Osadchuk* v. *Gordon*, 251 Mass. 540.

While there was error in permitting a witness to testify to certain statements made by one Hoover, the manager of the theatre, relative to what was done to save the property from water damage, yet, in view of the findings of the auditor, the bills presented by those who did various portions of the work, and especially the testimony of the witness O'Toole, these statements of Hoover were in the main merely cumulative evidence. It is plain that the lessee was not harmed by the admission of this evidence. *Bois-*

*vert* v. *Ward*, 199 Mass. 594.   *Perivoliotis* v. *Eveleth*, 251 Mass. 444.

A witness who was engaged in the business of repairing theatre chairs was permitted to state what he would have charged to repair each seat which had been damaged by the flood.   The lessee stated that it had no objection to the form of the question but excepted, as the judge might well have understood, on the ground that the subject matter of the inquiry was not in issue but that the only issue was whether the lessee exceeded the authority given to it by Stoneman in purchasing new seats and backs for the chairs.   From the subsequent testimony of this witness, it is apparent that the evidence was admitted as bearing upon the fair and reasonable cost of repairing the chairs.   The specific objection now relied upon — that the witness stated what he would have charged and not what would be the fair and reasonable cost for repairing the seats — was not brought to the judge's attention.   Having urged a single ground of objection to the admission of the evidence and a ruling having been made upon such objection, we think it was the duty of counsel if he contended that the evidence was inadmissible upon another ground to urge that point and not permit the judge to proceed on the theory that there was no objection other than the one which had been disposed of by the ruling.   The failure to mention this specific point to the trial judge, when what was stated purported to be the sole reason for objecting to the admission of the evidence, precludes it from raising the point in this court. *Anderson* v. *Beacon Oil Co.* 281 Mass. 108.   *Rothwell* v. *First National Bank of Boston*, 286 Mass. 417.   *Holt* v. *Mann*, 294 Mass. 21.   *Kolasinski* v. *Paczkowski*, *ante*, 73.

There is nothing in the various other exceptions saved by the lessee in either case that requires further discussion.   All of them have been examined and, as we perceive no prejudicial error, the entry in each case must be

*Exceptions overruled.*